The complainants herein are five individuals, members of The Collingswood Presbyterian Church, of Collingswood, New Jersey, who seek relief in behalf of themselves and all other members of that church who are loyal to the Presbyterian Church in the United States of America. The relief sought by the complainants is designed, first, to prevent the defendants from diverting the property of The Collingswood Presbyterian Church from the uses imposed upon it, that is, to prevent the use of such property for any purpose other than *Page 353 
the use thereof by the members of The Collingswood Presbyterian Church in accordance with the constitution, usages and customs of the Presbyterian Church in the United States of America; and, second, to prevent the defendant Rev. Carl McIntire from occupying the property and conducting services therein.
The defendants are The Collingswood Presbyterian Church, a corporation, and certain individuals who were, on June 15th, 1936, members, elders and trustees of said church, and Rev. Carl McIntire, who was pastor thereof from September 28th, 1933, to June 16th, 1936, on which latter date he was suspended from the ministry by the Presbytery of West Jersey.
The Collingswood Presbyterian Church was incorporated in 1903 under the General Religious Society act of 1875 (Rev. 1877 p.958), and amendments thereto. From the time of its organization to the present time, the religious society and congregation known as The Collingswood Presbyterian Church has been one of a large number of churches composing the church known as the Presbyterian Church in the United States of America, and has been governed by the judicatories of that church under the immediate jurisdiction and care of the Presbytery of West Jersey, an assembly of representatives of the several churches in the denomination within a certain district in this state composed of the counties of Camden, Gloucester, Salem, Cumberland, Cape May and Atlantic. In the governmental structure of the Presbyterian Church in the United States of America, the next assembly or judicatory above the Presbytery of West Jersey having jurisdiction over The Collingswood Presbyterian Church is the Synod of New Jersey, which is composed of representatives of all of the Presbyterian congregations of the denomination in the State of New Jersey. The supreme assembly and judicatory of the denomination is the General Assembly of the Presbyterian Church in the United States of America, which is composed of representatives from every presbytery in the denomination, and represents in one body all the churches of the denomination. *Page 354 
The form of government and discipline of the Presbyterian Church in the United States of America is contained in a written document known as the constitution of the Presbyterian Church in the United States of America. This constitution defines the powers, duties, and composition of the various judicatories of the church, and provides the procedure for the determination of matters of controversy in the church whereby any person aggrieved may have his complaint heard before the constituted courts of the church upon orderly process and trial, from the decision of which courts appeals may be carried from the lower to the higher judicatories until the matters in controversy have finally been decided by the highest tribunal of the whole church, to wit, the General Assembly of the Presbyterian Church in the United States of America.
The Collingswood Presbyterian Church has acquired and now holds certain real and personal property for religious uses according to the tenets of the Presbyterian Church in the United States of America, the denomination to which it belongs and is a part.
Rev. Carl McIntire was licensed to preach by the Presbytery of West Jersey; he was ordained a minister in the denomination on June 4th, 1931, by the Presbytery of West Jersey; on September 18th, 1933, he was called to The Collingswood Presbyterian Church, after constitutional procedure, and installed as pastor of the church on September 28th, 1933, where he continued as pastor until his suspension from the ministry on June 16th, 1936.
A controversy arose in the church at large among its ministers and lay members respecting the administration of foreign missions and other matters; without dwelling on the merits of that controversy, which I do not deem to be necessary in this cause, it appears that the General Assembly of 1934 of the Presbyterian Church in the United States of America, by its mandate, ordered all ministers and laymen of the Presbyterian Church in the United States of America to sever their connections with the Independent Board for Presbyterian Foreign Missions. *Page 355 
The Rev. Mr. McIntire refused to observe the requirements of the said mandate of the General Assembly of 1934; he was charged with insubordination and violation of his ordination vows, and was tried by the judicial commission of the Presbytery of West Jersey; after a trial lasting nine days he was found guilty, and judgment of suspension was entered. He appealed his conviction to the Synod of New Jersey which sustained the conviction by the Presbytery; he then appealed to the General Assembly, the supreme ecclesiastical court of the Presbyterian Church in the United States of America, which tribunal also sustained the judgment of suspension and ordered the Presbytery of West Jersey to execute judgment. On June 16th, 1936, pursuant to the judgment of the General Assembly, the Presbytery of West Jersey imposed sentence, and on June 30th, 1936, the Rev. Mr. McIntire was deposed from the ministry. Despite his suspension from the ministry of the Presbyterian Church of the United States of America, the Rev. Mr. McIntire has continued to preach and conduct services in the Collingswood Church; in his testimony at the final hearing of this cause, he stated that he has renounced the authority of the Presbyterian Church in the United States of America, and that he is a charter member of the Presbyterian Church of America, and a member of its Presbytery of New Jersey, although not an ordained minister of the latter organization.
On June 15th, 1936, at the call of the session of the Collingswood church, about five hundred of the twelve hundred members thereof held at the church a meeting over which the Rev. Mr. McIntire presided. At that time resolutions were presented and adopted by a vote of a large majority of those present in which they declared their severance from all connection with the Presbyterian Church in the United States of America, repudiated the authority of that church, and declared that from the time of the adoption of the resolution, stated to be June 15th, 1936, at ten-thirty P.M., the Presbytery of West Jersey had no jurisdiction or authority over The Collingswood Presbyterian Church, and that any connection which the Collingswood church had theretofore had with the *Page 356 
organization known as the Presbyterian Church in the United States of America was terminated, and that the Collingswood church withdrew from and declined further recognition of the jurisdiction of the Presbytery of West Jersey, and directed the clerk of the session of the Collingswood church to immediately forward a copy of the resolutions to the Presbytery of West Jersey officially informing them of said action.
A further resolution of the said congregation was then adopted as follows:
"Whereas the congregation of the Collingswood Presbyterian Church has just passed a certain resolution withdrawing from the jurisdiction of the Presbytery of West Jersey and in view of such action just taken and in order that there may be no misunderstanding, we hereby declare and resolve that:
"1. The Collingswood Presbyterian Church shall continue to function as the Collingswood Presbyterian church organization, the elders and the trustees being responsible to the congregation; the pastor, the secretary, the office clerk, the sexton, the organist, and the choir leader continuing their responsibilities as usual.
"Any action which may be taken by the Presbytery of West Jersey concerning our pastor can have and will have no effect whatsoever upon his continued occupancy of the pulpit of the Collingswood Presbyterian Church.
"Any action which may be taken by the Presbytery of West Jersey concerning the session, trustees, or any officers or members of the church is without binding force of any kind upon the Collingswood Presbyterian Church, and shall be ignored.
"The session and trustees of the Collingswood Presbyterian Church are hereby instructed and authorized to continue in possession of the real and personal property of the Collingswood Presbyterian Church for the benefit of the congregation of the Collingswood Presbyterian Church as heretofore, and all servants of the Collingswood Presbyterian Church shall continue in their present capacities to serve the congregation, including the pastor, secretary, office clerk, sexton, choir leader, and organist. Any and all funds, monies, documents, papers, records, choses in action, held by the Collingswood Presbyterian Church shall be continued to be held by the session and trustees of the Collingswood Presbyterian Church as heretofore. Any directions which the Presbytery of West Jersey might presume to make concerning any of these above mentioned things shall be ignored.
"All funds which have been sent to the organization of the Presbyterian Church in the U.S.A. shall no longer be sent to that organization. The benevolences remain under the control of the session of the Collingswood Presbyterian Church.
"2. The session of the church shall take immediate steps to see that the property is guarded at all times and that any one who may *Page 357 
come, presuming to have authority from the Presbytery of West Jersey, in any way to interfere with the religious worship of this congregation in its place of worship shall be considered a trespasser.
"3. The session of the Collingswood Presbyterian Church is hereby authorized to secure legal counsel and the Board of Trustees is hereby directed to pay any expenses which may be incurred by reason of having to engage counsel and/or for the protection of the property rights of the congregation of the Collingswood Presbyterian Church."
All the individual defendants in this cause were present at the congregational meeting aforesaid and voted in favor of said resolutions.
The Presbytery of West Jersey, acting under the authority of the constitution of the Presbyterian Church in the United States of America, sent Rev. T.T. MacEwan and Elder George W. Cole to visit the aforesaid congregational meeting of The Collingswood Presbyterian Church held June 15th, 1936; both of them were ejected from the building. The members of the session of the church were ordered by the Presbytery of West Jersey to cease to act, and the committee on vacancy and supply was given powers of session to co-operate with the members of the Collingswood Church who remained loyal to the Presbyterian Church in the United States of America; however, the defendant elders continued to exercise ecclesiastical authority over the Collingswood church, the Rev. Carl McIntire continued to conduct the services in said church, with the approval of the defendant elders and trustees. Rev. T. Reber Taggart, who was appointed moderator of the session by the Presbytery of West Jersey to occupy the pulpit of the Collingswood church on Sundays June 21, July 19th and August 2d 1936, was forbidden by the defendants to so act, and was by them effectively prevented from doing so. After the above resolutions were adopted by the congregation on June 15th, 1936, the church property was placed under guard at the direction of the defendants. All the defendants who testified at the final hearing admitted, on cross-examination, that they were not submissive to the government of the Presbyterian Church in the United States of America. Since the adoption of the above resolutions, all of the property of the Collingswood Church has remained in *Page 358 
the possession of the defendants, and out of the funds of the church have been expended moneys for its maintenance — all of which payments lack the approval of the West Jersey Presbytery. There has been no dissolution of the congregation of The Collingswood Presbyterian Church and the complainants do not seek to have the title or possession of the church property disturbed beyond requiring the use thereof to be devoted to the objects and purposes approved by the Presbyterian Church in the United States of America.
The foregoing statements present, I believe, a view of the situation leading up to the present controversy. As suggested at the outset, the complainants seek to enjoin The Collingswood Presbyterian Church and the members of the board of trustees and session thereof from diverting the property and temporalities of the church, seeking affirmative relief by way of a direction to the board of trustees to hold the property of the church for the use of the present members, and those who may become members, loyal to the Presbyterian Church in the United States of America, and also to enjoin the Rev. Carl McIntire, who is now officiating as the minister of the church, from preaching or conducting any services in The Collingswood Presbyterian Church until his censures are removed and his right to minister has been restored by due procedure. Incidentally, an accounting is sought concerning the alleged diversion of the funds by the defendants.
Under the statutes of New Jersey a trust is impressed upon the property acquired by The Collingswood Presbyterian Church.
"It shall be lawful for any religious society in this state, however incorporated, to purchase and hold, and also to convey and dispose of, any real estate which they deem necessary and expedient; provided, that the same shall not be used by the religious corporation acquiring the same for any other purpose than the rendering and maintaining in any building now or hereafter erected upon such real estate the worship of Almighty God, and the furtherance of religion according to the tenets and form of worship of the religious denomination to which such religious society belongs * * *." Rev. 1877 p. 959, as amendedP.L. 1898 p. 397: 3 Comp. Stat. p. 4309.
"That it shall not be lawful for the rector, wardens, and vestrymen, or the trustees, consistory, or session of any church, congregation or *Page 359 
religious society incorporated under any of the laws of this state, to divert the estate, property or revenue belonging thereto to any purpose except the support and maintenance of the church or religious or benevolent institution or object connected with the church or denomination to which such corporation shall belong, and the highest judicatory of any denomination from which property is attempted to be, or is being, or shall be diverted in violation hereof, is hereby authorized to enforce the foregoing provision, but nothing herein contained shall be construed as preventing action being taken by members of the congregation or otherwise as heretofore, to enforce said provisions." P.L. 1881p. 256; 3 Comp. Stat. p. 4312 § 12d.
Section 5, paragraph VIII, of the statute entitled "An act concerning the election and incorporation of the trustees and the management of the temporal affairs of Christian congregations connected with the Presbyterian Church in the United States of America," provides that the trustees shall have power over the care of the church property in the following language:
"Every incorporated board of trustees elected in accordance with any of the provisions of this act shall have power: * * *
"VIII. To exercise all other powers necessary for the proper care of the property held by them for the uses of the congregation, subject always, however, to such authority over the worship of the congregation including the musical service, over the times and places of preaching the word of God and of all other religious services, and over the uses to which the church buildings and other property may be put, as is or shall be committed by the constitution of the Presbyterian Church in the United States of America to the session of the church or to any other spiritual officers." P.L. 1905 p. 254; Comp. Stat. p. 4343
¶ 81.
It is urged by the defendants in this cause, notwithstanding the action of the congregation of The Collingswood Presbyterian Church in repudiating the authority of the Presbyterian Church in the United States of America and notwithstanding the expression of the individual defendants as being not submissive to the authority of that church, that any injunction or directions from this court concerning the use of the property should be denied. It is argued by them that the agencies and judicatories of the Presbyterian Church in the United States of America have so far departed from the fundamental principles, faith and constitution of the denomination, *Page 360 
that these denominational agencies and those avowing loyalty to them, are no longer entitled to assert any claim to, or beneficial interest in, the property of The Collingswood Presbyterian Church as against the congregation and officers thereof who have steadfastly remained loyal to, and have repudiated what they allege to be a departure from, the ancient doctrine, faith and constitution of the Presbyterian Church in the United States of America under which demonination the title was acquired and under which denomination the congregation of the local church was formed.
While a portion of the congregation of the Collingswood church attempted by resolution to withdraw from the jurisdiction of the Presbytery of West Jersey, this action was ineffective because of the refusal or failure of the Presbytery to consent to such withdrawal. Since the congregation of the church was not dissolved, neither the question of title nor the right to the possession of the church property is involved. The property still remains in the possession of the defendant trustees. So far as the evidence discloses, The Collingswood Presbyterian Church has not affiliated itself with the Presbyterian Church of America, the church organization to which the Rev. Carl McIntire seems to be affiliated by reason of his membership in the Presbytery of New Jersey and in the Presbyterian Church of America.
The defendants' effort has been to prove that the ministration of the Rev. Mr. McIntire and of the session of the Collingswood church have been conducted in accordance with the only true and faithful interpretation of the constitution and discipline of the Presbyterian Church in the United States of America. I was impressed throughout the trial of this cause with the honesty and sincerity of the defendants, and with the conscientious zeal with which they pursued their course of action. It is difficult, however, to reconcile, in law, their attempted withdrawal from, and repudiation of, the jurisdiction and authority of the church under which they were organized and under which they acquired valuable property rights, with the right they now assert to hold that property as an independent body free from all trust responsibility to the church that gave them life. *Page 361 
The principle seems to be firmly established that a congregation belonging to a religious denomination and subject to the constitution, faith and doctrines thereof, cannot use its property for a purpose other than that sanctioned by the denomination. The instant case presents the anomalous situation of a large part of the congregation of The Collingswood Presbyterian Church renouncing and refusing submission to the judicatories of the Presbyterian Church in the United States of America, and at the same time endeavoring to maintain an independent church which, they say, adheres to the fundamental doctrines of faith of the Presbyterian Church in the United States of America, claiming that the latter church has become disloyal to those fundamental doctrines.
During the course of the hearing certain evidence was conditionally admitted, over the objections of counsel, involving questions of doctrine; I am convinced that the question of church doctrine is immaterial in this controversy and all evidence relating thereto is excluded.
It is further urged by the defendants that the trial and suspension of the defendant Rev. Carl McIntire was a violation of the constitution of the Presbyterian Church in that the mandate of the General Assembly of 1934 hereinbefore referred to, said to form the basis of the charges against him, was an improper and illegal basis therefor. But these objections were raised in the various judicatories of the church, and the final disposition made by the General Assembly of the church must be accepted as conclusive in litigation before the civil courts unless there be fraud, collusion or arbitrariness in the conduct of these proceedings, of which latter vices I find a total absence.
In the case of Watson v. Jones (in the United States supreme court), 80 U.S. 679, one of the leading cases in this country dealing with the effect of the decisions of the judicatories of the church, Mr. Justice Miller, speaking for the court, said:
"The questions which have come before the civil courts concerning the rights to property held by ecclesiastical bodies, *Page 362 
may, so far as we have been able to examine them, be profitably classified under three general heads, which, of course, do not include cases governed by considerations applicable to a church established and supported by law as the religion of the state.
"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support or spread of some specific form of religious doctrine or belief.
"2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.
"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control, more or less complete, in some supreme judicatory over the whole membership of that general organization.
 * * * * * * *
"But the third of these classes of cases is the one which is oftenest found in the courts, and which, with reference to the number and difficulty of the questions involved, and to other considerations, is every way the most important.
"It is the case of property acquired in any of the usual modes for the general use of a religious congregation which is itself part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government.
"The case before us is one of this class growing out of a schism which has divided the congregation and its officers, and the presbytery and synod, and which appeals to the courts to determine the right to the use of the property so acquired. *Page 363 
Here is no case of property devoted forever by the instrument which conveyed it, or by any specific declaration of its owner, to the support of any special religious dogmas, or any peculiar form of worship, but of property purchased for the use of a religious congregation, and so long as any existing religious congregation can be ascertained to be that congregation, or its regular and legitimate successor, it is entitled to the use of the property. In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the presbytery over the session or local church, the synod over the presbytery, and the General Assembly over all. These are called in the language of the church organs, `judicatories,' and they entertain appeals from the decisions of those below and prescribe corrective measures in other cases.
"In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of the church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.
 * * * * * * *
"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, and the establishment of no sect. The right to organize voluntary religious *Page 364 
associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if anyone aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and to their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.
"Nor do we see that justice would be likely to be promoted by submitting those decisions to review in the ordinary judicial tribunals. Each of these large and influential bodies (to mention no others, let reference be had to the Protestant Episcopal, the Methodist Episcopal, and the Presbyterian churches), has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collections of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own. It would, therefore, be an appeal from the more learned tribunal in the law which should decide the case, to one which is less so."
In the case of Trustees of Presbytery of Jersey City v.Trustees of First Presbyterian Church of Weehawken,80 N.J. Law 572, Mr. Justice Trenchard, speaking for our supreme court said:
"A local congregation is never independent, but ab initio an integral part of the denomination: this is the implied condition *Page 365 
of its existence, and binds all its members. Fair v. FirstMethodist Episcopal Church, 12 Dick. Ch. Rep. 496, 501; Everett
v. First Presbyterian Church, 8 Id. 500; American PrimitiveSociety v. Pilling, 4 Zab. 653. While properly affiliated with the denominational body, the congregation can act with a certain degree of independence, but they can never use the property in such a way as to amount to a use not denominational in character; that is, to a use other than that sanctioned by the denomination to which such congregation belongs. American Primitive Society
v. Pilling, supra. For instance, they cannot secede and take their property with them, even if they do so unanimously.American Primitive Society v. Pilling, supra; Baker v.Fales, 16 Mass. 488."
In the case of Schilstra v. Van Den Heuvel, 82 N.J. Eq. 155;S.C. 612, the church involved was one holding the Presbyterian system of government; there the court of errors, though modifying the decree in another particular, approved the language of Vice-Chancellor Howell who said (at p. 166):
"Independent churches may do what they please with their property, provided legal action is taken to that end; but when a religious society becomes affiliated with other religious societies, and they unite to construct and maintain for their mutual advantage higher judicatories to which they subject themselves, then the individual society or worshipping unit holds its property and temporalities under an obligation to continue the affiliation until it can be broken by mutual consent; and if secession is attempted by a faction, however large or however small, such faction will not be allowed to carry the church property with it, certainly not so long as there is a loyal body which is recognized by the superior judicatory."
In view of the avowed purposes of the defendants, as expressed in the resolutions heretofore adopted, to ignore the authority of the Presbytery of West Jersey concerning the real and personal property of the Collingswood church, to guard the same, and to resist the emissaries of the Presbytery of West Jersey as trespassers, I deem complainants entitled to a decree enjoining the diversion or threatened diversion of *Page 366 
the property of the Collingswood church to any use not sanctioned by the Presbyterian Church in the United States of America; directing the trustees of that church to hold such property for the use of the present members, as well as those who may become members, loyal to the Presbyterian Church in the United States of America; and enjoining the Rev. Carl McIntire from preaching or conducting services in the Collingswood Presbyterian Church until his censures are removed and his right to minister has been restored by due procedure according to the constitution and practices of the Presbyterian Church in the United States of America. If it should be found necessary to have the subject of accounting embraced in the decree, I will hear counsel on that matter when the decree is presented. *Page 367