THE PRESBYTERY OF INDPLS. ETC., *v.*
FIRST UNITED PRESBYTERIAN CHURCH (OF INDPLS.)

[No. 667A14. Filed July 3, 1968. Rehearing denied September 13, 1968.[1]
Transfer denied May 14, 1969.]

---

1. See 143 Ind. App. 271, 240 N.E. 2d 77.

*Grier M. Shotwell,* and *Kothe, Shotwell & Kortepeter, of* counsel, of Indianapolis, for appellant.

*Nelson G. Grills,* of Indianapolis, for appellees.

BIERLY, J.—This is an appeal from a judgment rendered by the Marion Superior Court, Room 5, Marion County, Indiana, against appellant in an action brought in said trial court,

> "on behalf of an organized general church to establish its right of title to and possession of the church *property* of a subordinate, member congregation upon the latter's attempted withdrawal from the denomination, and the dissolution of the congregation". (Appellant's brief).

Appellee Church took exception to above quotation and after the emphasized word "property" stated:

> "of an Indiana Corporation whose members were also members of the congregation of a particular church of the general church body and who as a congregation of a particular church elected without dissent among the congregation to withdraw from the general church body." (Appellee's brief).

Due to a wide variance as to the issues involved in this appeal by appellant and appellees, the statement of each is given. Appellant says,

"(T)he issue was as to the binding effect on the civil courts of a decision by the highest ecclesiastical court of an organized church body denying a petition by a member congregation for leave to withdraw from the denomination and take with it the property here in question because of alleged differences in faith, doctrine, discipline and practice and the consequent dissolution of the congregation under ecclesiastical law." (Appellant's brief).

On the other hand, the appellees contend the issue was:

"What is the effect of a decision by the highest ecclesiastical court of an organized general church body denying a petition by the congregation of a particular church for leave to withdraw from the denomination and take with it the property here in question because of alleged differences in faith, doctrine, discipline and practice and the consequent dissolution of the congregation under ecclesiastical law upon the title to the property and the right of the possession of the property by an Indiana Corporation which the members of the congregation were corporate members and which held both title and possession to the property without limitation." (Appellees' answer brief).

The issue was set forth in four paragraphs of Complaint: Paragraph I was a plea in ejectment; Paragraph II and IV involved pleas in equity upon the theory of a constructive trust; and Paragraph III plead a quiet. Defendants answered separately to each of these paragraphs, constituting in effect a general denial.

Trial was to the court without benefit of a jury. The court rendered a finding and judgment in favor of the defendants, and which judgment is as follows:

"IT IS NOW, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the

plaintiff take nothing by its complaint, and that the defendants recover of and from the plaintiff their costs herein."

Plaintiff timely filed a new trial motion which was overruled. This appeal followed. The sole assignment of error relied on is the overruling of appellant's motion for a new trial. Specification No. 9 in support of said motion alone is relied upon, the same being the decision is contrary to law.

A brief narration of incidents leading to the suit being filed in the trial court is appropos.

The Presbytery of Indianapolis commenced this action against the First United Presbyterian Church of Indianapolis for the purpose of recovery of the property of said First United Presbyterian Church, following said attempted secession from the United Presbyterian Church in the United Church of America in approximately May, 1958.

The First United Presbyterian Church of Indianapolis shall hereafter be designated as the Indianapolis Church. This church was organized December 22, 1896, and thence constituted a part of the United Presbyterian Church of North America.

The congregation of the Indianapolis Church, on March 30, 1958, adopted the following resolution:

"We, the said Congregation, instruct the Session and the Trustees, or a committee of them, to make known our decision to the Presbytery of Indiana and the General Assembly of the United Presbyterian Church of North America, *and to request permission to withdraw from the denomination with our property.*" (Emphasis supplied).

This request was denied on May 27, 1958. On this date the Union of the United Presbyterian Church of North America, and the Presbyterian Church of the United States of America, was consummated. This union was perfected in conformity to actions taken in accordance to their respective constitutions

and united under the name of the United Presbyterian Church in the United States of America, and as a result, all constituent churches of the uniting churches became integral parts of the united church.

It was from the United Presbyterian Church of North America that the membership of the Indianapolis Church attempted to secede, thereby disregarding the tenets of the constitution of the church.

The Indianapolis church continued in its attempt to secede and to remove its property from the jurisdiction of the Presbytery of Indianapolis, which was the judicatory of authority in accordance with the constitution of the United Presbyterian Church in the United States.

In accordance with procedure prescribed by the church laws and regulations, the Presbytery of Indianapolis cited the appellee church and ordered it to appear before the Presbytery on May 11, 1959, at a designated time and place, to show cause why the Indianapolis Church should not be dissolved. There was no response to this citation by or in behalf of the Indianapolis church. On said date of May 11, 1959, the Presbytery dissolved the Indianapolis Church and ordered said Presbytery officials to recover and assume possession of the church property. Failure to recover the possession of the church property lead to the filing of suit in Marion Superior Court, Room 5.

The constitution of the United Church of the United States of America, and of which the appellee church is a subordinate part and subject to, as set forth in Form Govt. Chapters XXXII, Section 11, provides:

"Whenever a particular church of the United Presbyterian Church in the United States of America, is formally dissolved by the Presbytery, . . . such property as it may have, both real and personal shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit, and appoint, or such property

may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of The United Presbyterian Church in the United States of America."

The question we are called upon to resolve in this appeal, is whether the action by the trial court by its judgment decreeing that the appellee church retain the real estate in question, thereby ignoring the action taken by the authorized judicatory of The United Presbyterian Church in the United States of America, and the decision of the court is contrary to law and violative of the Constitution of the United States.

The appellant herein is requesting the Appellate Court to reverse the judgment of the trial court and to direct a judgment in favor of plaintiff and in so doing will uphold the action of the Presbytery of Indianapolis as being in accordance to law.

We shall approach the matter involved in this appeal by setting forth the organization of Presbyterianism in reference to the holding and possession of property.

In the case of *Barkley v. Hayes* (1913), 208 Fed. 319, which case was affirmed on appeal cited at 222 Fed. 669, and 247 U.S. 1, the court in the opinion in 208 Fed. said in part, in referring to Presbyterian property rights:

". . . In this church the religious congregation or ecclesiastical body holding the property is but a subordinate member of the general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control, more or less complete, in some supreme judicatory over the whole membership of that general organization. The local congregation is itself but a member of a much larger and more important religious organization, is under its government and control, and is bound by its orders and judgments. Therefore, when the property held by the church is that purchased or conveyed for the general use of the religious congregation, not devoted forever by the instrument which conveyed it nor by any specific declaration of its owner to the support of any special religious dogmas, or any peculiar form of worship, it is and re-

mains the property of the general church which exercises such general and ultimate power of control. *It does not belong to the particular congregation which uses it, much less to the individual members of such a congregation.* It does not belong to the presbytery or the synod, nor, in a strict sense, to the general assembly. It belongs to the church which is composed of its entire membership . . . ." (Not our emphasis).

\* \* \* \* \*

"The government of the Presbyterian Church is republican and representative in character. Its administration is vested, not in the individual members, not in the congregations, but in the general assembly and the presbyteries; and the church as a whole, acting through its supreme governing bodies, exercises the ultimate rights of ownership and control over all its properties."

The case of *Watson v. Jones* (1871), 13 Wall 679, is a landmark opinion by the United States Supreme Court relative to church property and especially in reference to the Presbyterian Church in the United States of America. This opinion supported the faction loyal to said church.

It may be noted that said opinion classified cases coming before the Supreme Court in three categories, to-wit:

"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support, or spread of some specific form of religious doctrine or belief.

"2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.

"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization."

The third of these cases was before the Supreme Court for determination. Involved therein was property acquired for the general use of a religious congregation, a part of a large and general organization of the same religious denomination, and "with which it is more or less intimately connected by religious views and ecclesiastical government."

Also, in the third class of cases, the court in *Watson, supra,* said:

> "(W)e think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, *whenever the questions of discipline or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decision as final, and binding on them, in their application to the case before them".* (Emphasis supplied).

We approve this ruling of the court in the *Watson* case.

The court further, in the *Watson* case, *supra,* explained the Presbyterian System of government, beginning with the Presbytery over the local church, sometimes called sessions, thence the synod over the Presbytery, and thereafter the General Assembly over all. The case involved the disposition of property occasioned by a "schism" in the church. The Supreme Court held for the group loyal to the Presbyterian Church in the United States of America.

This court is in accord with the foregoing decision and judgment.

The Supreme Court, in *Kedroff v. St. Nicholas Cathedral* (1952), 344 U. S. 94, 73 S. Ct. 143, 97 L. Ed. 120, reaffirmed the *Watson, supra,* case. Issues were very similar to the issues in the case at bar.

In 1952, the New York legislature passed a bill having for its purpose the freeing of the Russian Orthodox Church in

the United States from any atheistic and subversive influence and control and specifying that churches formerly administratively subordinate to the Russian Church, to be now controlled and governed by the ecclesiastical body in control of the schismatic group of the church.

An ejectment proceeding was brought by the Russian Church against the defendants, the schismatics, by officials appointed by the mother church. In the interpretation of the statute the Court of Appeals of New York found for the defendants. On appeal, the United States Supreme Court reversed the Court of Appeals on the basis that the statute requiring conformity to the church statute violated the constitutional guarantees of freedom of religion.

Following this decision by the Supreme Court, the Court of Appeals attempted to nullify the Supreme Court decision by ordering a new trial of the case on a common law issue believed pertinent.

In this second trial, the Court of Appeals found against the right of the Patriarch's appointee to assume control of the Cathedral, inasmuch as the Patriarch was subject to the Russian Government, 7 N. Y. 2d 191, 164 N. E. 2d 687.

This decision was appealed to the Supreme Court. The Supreme Court again reversed the Court of Appeals. We quote a part of the court's ruling in *Kreshik v. St. Nicholas Cathedral* (1960), 363 U. S. 190, 80 S. Ct. 1037, 4 L. Ed. 2d 1140, as follows:

"(I)t is established doctrine that 'it is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of State power which we are asked to scrutinize' . . . .

"Accordingly our ruling in *Kedroff* is controlling here, and requires dismissal of the complaint."

We are of the opinion that the use and occupancy of The First United Presbyterian Church of Indianapolis was a mat-

ter of ecclesiastical government which could not, constitutionally be impaired by any state legislation nor by any action by the state judiciary. In *Kedroff, supra,* the Court gave emphasis to this ruling in these words:

"Ours is a government which by the 'law of its being' allows no statute, state or national, that prohibits the free exercise of religion. There are occasions when civil courts must draw lines between the responsibilities of church and state for the disposition or use of property. Even in those cases when the property right follows as an incident from the decisions of the church rule controls. This, under our Constitution necessarily follows in order that there may be free exercise of religion."

The church judicatory, when the matter of the use and disposition of property of the First United Presbyterian Church of Indianapolis, in the case at bar, was brought to its attention, made its decision based on ecclesiastical authority.

Inasmuch as the objectors failed to appeal to a higher ecclesiastical authority available by established church procedure, hence this presented a situation where the civil court should apply the ecclesiastical principles based on the application of principles in the cases cited.

These principles of law as heretofore stated were adhered to in *Ramsey v. Hicks* (1910), 174 Ind. 428, 91 N. E. 344, In this case, a merger of the Cumberland Presbyterian Church with the Presbyterian Church of the United States of America was effected; but a faction of the Cumberland Church opposed the merger, and brought suit against those holding possession of the property by authority of the surviving denomination. We have the situation where the defendants supported the merger of the churches agreed in the action of the assemblies in the declaration that such merger was effectively accomplished and, therefore, they (the defendants) represented the true United Church and as such representa-

tives were entitled to the title to the property. Plaintiffs contested defendants' claim and maintained that the general assembly of the Cumberland Presbyterian Church lack authority to support a merger with another religious group, held for naught the action taken, refused to accept such merger, voted to return the original name, and asserted that plaintiffs were the true Washington Congregation of the Cumberland Presbyterian Church and, therefore, the rightful and legal owners of the disputed property.

The court, after considering the organization structure of the Presbyterian Church, found that the defendants held possession and title to the property as set forth in the pronouncement by the judicatory of the surviving church. Our State Supreme Court set forth the applicable law, cited also *Watson v. Jones, supra,* and rendered a finding for the defendants. The Court in so doing cited earlier Indiana decisions and as a part of its opinion said:

> "This record does not present the case of a factional division of a congregation, or schism in the body of a church, on account of conflicting belief or doctrinal innovations, but that of a minority dissenting from the official judgment of the highest church judicatory, in which action, though protesting, they yet participated. It follows that unless the offending act was clearly unconstitutional and ultra vires, appellants (plaintiffs) and those allied with them were bound, and by their insubordination have become seceders, with no right to share in the property and temporalities of the church of which they were formerly a part."

We again refer to the case of *Ramsay v. Hicks, supra,* relative to the procedural phase of the case at bar, wherein the court said:

> "This property appears to have been purchased in the ordinary way of business, . . . and conveyed to the trustees by a general warranty deed, without condition of limitations. It is entirely clear that no trust, express or implied, is attached to the title. Appellants (plaintiffs) at no time had any interest in the property except as

members of a congregation which was an integral part of the ecclesiastical society known as the Cumberland Presbyterian Church. Our only duty is to determine the identity of the ecclesiastical successor of the original grantee. This we have seen has been determined for us, since the union of the Cumberland Church with the Presbyterian Church carried into the united body all of its property. The validity of that union appellants cannot question, and in it they must acquiesce or defy the decrees of the church to which they pledged allegiance. Consciences cannot be bound, and if in the assertion of individual opinion and conscientious dictates appellants segregate themselves from the body of the church, they must depart as they came in—empty-handed.

"The court did not err in overruling appellants' motion for a new trial.

"The judgment is affirmed."

The Supreme Court in the case of the *Indiana Annual Conference Corporation v. John W. Lemon* (1956), 235 Ind. 163, 131 N. E. 2d 780, held that where a local church subordinate to a larger church organization of faith is dissolved or is abandoned, all church property of the local church vests in the larger or superior organization of the same faith, should the discipline regulations and by-laws of the superior church organization so determine.

It is, of course, appellees' contention that since by the deed of conveyance of March 11, 1957, of the real estate in issue to a corporation as grantee, the church law or rule was not applicable.

We are of the opinion that regardless as to how the title to the real estate was held that it was held for church purposes, and thus for the benefit of the church and the parishoners. Since the local congregation is the primary unit of the Presbyterian Organization of a graduated system culminating in the general assembly at the apex, all property held by the local unit regardless as to the manner and method held must be considered as held in trust

for the denomination. The forming of a corporation is primarily for the purpose of avoiding individual liability upon the part of officials selected to operate the corporation.

The Supreme Court in the case of *Gaff v. Greer* (1887), 88 Ind. 122, 45 A. R. 449, cast aside the defense that the corporation was without the control of church law and ruled accordingly, while in the case of *Doughty v. Herr* (1933), 97 Ind. App. 427, 185 N. E. 657, the court ruled in favor of a local congregation as holding title to real estate, nevertheless the deed vested title in "Trustees of Union Chapel of Hancock County, in the State of Indiana." This Union Chapel was a local congregation not referred to as a part of a larger denomination or church organization.

Cases of foreign jurisdiction may be cited in support of the principles of law we have advanced in Indiana. We refer to a case entitled *Trustees of Presbytery of Jersey City v. Trustees of First Presbyterian Church of Weehawken* (1910), 80 N. J. L. 572, 78 Atl. 207. A pertinent and applicable part of that opinion is as follows:

> "While properly affiliated with the denominational body, the congregation can act with a certain degree of independence, but they can never use the property in such a way as to amount to a use not denominational in character; that is, to a use other than that sanctioned by the denomination to which the congregation belongs. . . . For instance, they cannot secede and take the property with them, even if they do so unanimously."

Other foreign cases supporting appellant's point of view are *Kelly v. McIntire* (1938), 123 N. J. Eq. 351, 197 Atl. 736, and *Presbytery of Huron v. Gordon* (1941), 68 S. D. 228, 300 N. W. 33.

The appellee church received aid through the years from the United Presbyterian Church of North America in a total sum of $45,436.31, which has never been repaid; the appellee never executed a resolution and Declaration of

Trust as required by the General Assembly of the Church of North America.

At a special meeting of the congregation of appellee church on 30th day of March, 1958, of a total members present only 23 voted and approved a resolution, closing with this paragraph, to-wit:

> "We, the said congregation, instruct the Session and Trustees, or a committee of them, to make known our decision to the Presbytery of Indiana and the General Assembly of the United Presbyterian Church of North America, and to request permission to withdraw from the denomination with our property."

By this petition and request, appellee church gave recognition and indirectly allegiance to the superior authorities of their denomination. This request was denied by the General Assembly of the Church of North America. Appellee church neither appealed this action to the appellate courts of the church, but also failed to appear and show cause why the congregation should not be dissolved. This failure to appear resulted in the action filed by appellant.

We are of the opinion this is a case in which the evidence is without conflict and can lead to one conclusion. The trial court reached an opposite conclusion. Hence we have a case which we believe the decision of the trial court should be set aside on the ground it is contrary to law. We further conclude that when the undisputed evidence, considering only that most favorable to the appellant with all reasonable inference that may be drawn, entitles one who has the burden of proof to a decision which has been denied him, such decision of the trial court is contrary to law. *Hinds v. McNair* (1955), 235 Ind. 34, 129 N. E. 2d 553; *Pokraka v. Lummus* (1951), 230 Ind. 523, 104 N. E. 2d 669.

There is a tendency to lose sight of the fact that church denomination, fraternal organizations, and associations spon-

sored by various groups are continuous bodies, operated and governed by duly chosen officials usually of limited tenure. These organizations are not *owned* by any particular individual or group, but are entities which continue their existence and officials from time to time are succeeded by duly chosen officials.

The logic of appellees' argument in the present action of their case at bar cannot be sustained inasmuch as they were acknowledged seceders from the church organization to which they owed allegiance, and hence were without authority to attempt to claim ownership of this church property which was only held in trust. The church membership from year to year changed by death of some members, by new members coming into the fold, and naturally the officers likewise at best had only a limited tenure. Members long since departed contributed money, attendance and support for the maintenance and continuation of the physical plant and the preservation of the denominational doctrines and discipline; appellees' course of action, if permitted to prevail, would break faith with former members and also deprive the whole church organization of physical assets to which, in our opinion, the denomination is entitled. We cannot lend our approval to an attempt of a dismemberment even in a small degree of one of our great religious denominations.

We are of the opinion that the decision of the trial court is contrary to law, and said judgment should be reversed, and that appellant's motion for a new trial should prevail.

Judgment reversed and new trial ordered.

Cook, P.J., Pfaff and Smith, JJ., concur.

NOTE.—Reported in 238 N. E. 2d 479.