BERKAW *v.* MAYFLOWER CONGREGATIONAL CHURCH

OPINION OF THE COURT

1. RELIGIOUS SOCIETIES—ESTABLISHED DOCTRINE—CHANGE IN DOCTRINE—VOTE OF CONGREGATION—CHURCH PROPERTY.

   The membership of a church congregation does not have the right to effect by majority vote a change in religious practice as against those who faithfully adhere to the characteristic doctrine of the church, and in doing so to deprive the minority of the use of church property.

2. RELIGIOUS SOCIETIES—ESTABLISHED DOCTRINE—CHANGE IN DOCTRINE—CHURCH PROPERTY—JURISDICTION OF COURTS.

   Civil courts have no role in determining ecclesiastical questions in the process of resolving church property disputes; therefore summary judgment and accelerated judgment for defendant church in an action by which plaintiffs sought to prevent a merger entered into by defendant on the ground

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 45 Am Jur, Religious Societies § 65 *et seq.*
[3] 45 Am Jur, Religious Societies §§ 67, 80.

that it represented a departure from church doctrine was proper because a determination of whether the merger represented a departure from established doctrine was for the church majority and not for the civil courts where the church majority denied that any departure was made.

3. RELIGIOUS SOCIETIES—MERGER—ESTABLISHED DOCTRINE—CHANGE IN DOCTRINE—DETERMINATION.

Whether participation by a Congregational church in a merger with another religious organization repesented a departure from Congregational church doctrine is to be determined by a majority of the members of the church since each Congregational church is autonomous with all ecclesiastical power vested in its assembled brotherhood.

Appeal from Wayne, John B. Swainson, J. Submitted Division 1 April 11, 1969, at Detroit. (Docket No. 5,892.) Decided June 26, 1969. Rehearing denied August 4, 1969. Leave to appeal denied March 26, 1970. See 383 Mich 774.

Complaint by Helen Joan Berkaw, and others similarly situated, against Mayflower Congregational Church, a Michigan corporation, for declaratory judgment that a merger between defendant and the United Church of Christ is void, to quiet title to the real estate and personal property of defendant church in plaintiffs, and for certain injunctive relief. Defendant's motions for accelerated judgment and summary judgment granted. Plaintiffs appeal. Affirmed.

*Beaumont, Smith & Harris* (*Alfred E. Lindbloom,* of counsel), for plaintiffs.

*Dykema, Wheat, Spencer, Goodnow & Trigg* (*H. Gordon Wood* and *Laurence D. Connor,* of counsel), for defendant.

*Amicus curiae: Thomas G. Long.*

Before: LESINSKI, C. J., and FITZGERALD and
V. J. BRENNAN, JJ.

LESINSKI, C. J.   This is an appeal from summary
and accelerated judgments granted to defendant,
Mayflower Congregational Church, by the Wayne
county circuit court.

The action arose following a merger of the Evan-
gelical and Reformed Churches and the Congrega-
tional Christian Churches into a new church, the
United Church of Christ.*   Pursuant to that
merger, defendant local church, Mayflower Congre-
gational Church, by a majority (253 to 204), voted
to join the United Church of Christ.

Plaintiffs constitute the "faithful minority" of
the Mayflower Congregational Church.   They filed
suit to quiet title to the realty and personalty of
defendant church in themselves, on the grounds that
the United Church of Christ did not conform to
the existing Congregational doctrines of the May-
flower Church.   In bringing this action, plaintiffs
relied upon the Michigan doctrine that the member-
ship of a congregation does not have the right to
effect, by majority vote, a change in religious prac-
tice as against those who faithfully adhere to the
characteristic doctrine of the church, and thereby
deprive the minority of the use of church property.
*Davis* v. *Scher* (1959), 356 Mich 291.

Defendant church, representing the majority of
the congregation, answered that defendant, by be-
coming part of the United Church of Christ, did
not effect a departure from Congregational prac-
tice.   Furthermore, defendant asserted that this

---

* Additional aspects of this litigation are presented in two prior
appeals.   *Berkaw* v. *Mayflower Congregational Church* (1965), 1
Mich App 252, *reversed* (1966), 378 Mich 239.   Regarding further
legal history of the merger, see, also, *First Congregational Church
and Society of Burlington, Iowa* v. *Evangelical and Reformed Church*
(CA 2, 1962) 305 F2d 724.

Court lacks jurisdiction to decide the ecclesiastical issues presented by reason of the First and Fourteenth Amendments to the United States Constitution.

The trial court granted defendant's motion for accelerated judgment, finding as a matter of law that the court lacked jurisdiction of the subject matter by reason of the First and Fourteenth Amendments to the United States Constitution. Moreover, the court granted defendant's motion for summary judgment, finding both no genuine issue of material fact and failure of the complaint to state a cause of action. Regarding the summary judgment, the court found as a matter of law that the provisions of the constitution and by-laws of the United Church of Christ do not abridge the autonomy of defendant church and are neither mandatory nor regulatory, but merely recommended procedures describing a voluntary relationship.

Plaintiffs appeal the decision of the trial court, contending *inter alia* that the trial court has jurisdiction to quiet title in the faithful minority where the church departs from Congregationalism.

In *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 US 440 (89 S Ct 601, 21 L Ed 2d 658), a case decided on January 27, 1969, after the briefs in this case were submitted but discussed in the defendant's supplemental brief and in plaintiff's supplemental reply brief, the United States Supreme Court held that the civil courts have *"no role in determining ecclesiastical questions in the process of resolving property disputes"*. (Emphasis supplied.)

As stated by the Supreme Court, the *Mary Elizabeth Case* involved:

"A church property dispute which arose when two local churches withdrew from a hierarchical general church organization. Under Georgia law the right to the property previously used by the local churches was made to turn on a civil court jury decision as to whether the general church abandoned or departed from the tenets of faith and practice it held at the time the local churches affiliated with it. The question presented is whether the restraints of the First Amendment, as applied to the States through the Fourteenth Amendment, permit a civil court to award church property on the basis of the interpretation and significance the civil court assigns to aspects of church doctrine."

The Supreme Court reversed the Georgia jury verdict granting church property to the local churches based upon a finding of fundamental abandonment of the original doctrines by the general church. It reasoned that:

"The First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of *controversies over religious doctrine and practice.* If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely

ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for essentially religious purposes, *Abington School District* v. *Schempp* (1963), 374 US 203 (83 S Ct 1560, 10 L Ed 2d 844); the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions." (Emphasis supplied.)

We consider the *Mary Elizabeth* decision to be controlling in the instant case. The fundamental inquiry in this case was whether the majority, by voting to become a part of the United Church of Christ, departed from Congregational doctrine. Clearly, therefore, in order to grant the relief plaintiffs request, ecclesiastical issues regarding departure from doctrine must be resolved by civil courts. Such a determination was expressly prohibited by *Mary Elizabeth:*

"The Georgia courts have violated the command of the First Amendment. The departure-from-doctrine element of the implied trust theory which they applied requires the civil judiciary to determine whether actions of the general church constitute such a 'substantial departure' from the tenets of faith and practice existing at the time of the local churches' affiliation that the trust in favor of the general church must be declared to have terminated. This determination has two parts. The civil court must first decide whether the challenged actions of the general church depart substantially from prior doctrine. In reaching such a decision, the court must of necessity make its own interpretation of the meaning of church doctrines. If the court should decide that a substantial departure has occurred, it

must then go on to determine whether the issue on which the general church has departed holds a place of such importance in the traditional theology as to require that the trust be terminated. A civil court can make this determination only after assessing the relative significance to the religion of the tenets from which departure was found. Thus, the departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role."

In the instant case, plaintiffs allege a departure and defendant specifically counters that no changes in doctrine occurred. Thus, the case is unlike *Davis* v. *Scher, supra,* where in a property dispute *both parties agreed* that a change in doctrine occurred, and the court could find that no ecclesiastical questions were in dispute. Where there is no agreement that a departure occurred, the ecclesiastical conflict destroys civil court jurisdiction to resolve the property dispute.

Although the *Mary Elizabeth Case* involved churches utilizing a hierarchical form of organization, we see no basis in that case for a distinction making *Mary Elizabeth* inapplicable to a congregational form of organization. The essence of the Supreme Court decision is the prohibition of civil court determination of ecclesiastical questions. Thus, in the absence of fraud, collusion, or arbitrariness, the proper ecclesiastical body, and not the civil court, must decide church doctrine. In the *Mary Elizabeth Case,* since Presbyterian churches were involved, the decision of Presbyterian church tribunals as to church doctrine was controlling. In the instant case, the Mayflower Congregational

Church is autonomous with all ecclesiastical power vested in its assembled brotherhood. As such, the decision of a majority of the members is controlling in determination of ecclesiastical questions. Under the First and Fourteenth Amendments to the United States Constitution, this leaves civil courts no role in disputes regarding substantive ecclesiastical matters.

Due to our resolution of the jurisdictional issue, consideration of the remaining contentions of plaintiff on appeal is unnecessary.

Affirmed. Costs to appellee.

V. J. BRENNAN, J., concurred.

FITZGERALD, J. (concurring specially). While it has been written that, "It is a foolish thing to make a long prologue and to be short in the story itself,"[1] I cannot refrain from briefly observing that strict application of the *Mary Elizabeth Case*[2] catapults us to the ultimate irony that churches have been divorced from any statutory protections, from fostering influences furnished by state legislatures, and from all the benefits of law save perhaps those "marginal" few cited in *Gonzales*.[3]

I do not believe *Mary Elizabeth* should be sanctified this far, and I specially adopt the concurrence of Mr. Justice Harlan in that case.

The instant case, however, is amenable to the imminent prohibitions of *Mary Elizabeth* since the core decision here revolves around the question: What is Congregationalism? No around-the-mul-

---

[1] The Apocrypha, 2 Maccabees II, 32.

[2] *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 US 440 (89 S Ct 601, 21 L Ed 2d 658).

[3] *Gonzalez* v. *Roman Catholic Archbishop of Manila* (1929), 280 US 1 (50 S Ct 5, 74 L Ed 131).

berry-bush reasoning can remove us from the fact that the question is ecclesiastical or, perforce, one of faith and creed, and thus precluded to us.