PRICE ET AL. *v.* MERRYMAN ET AL.

[No. 1069A181. Filed June 30, 1970. Rehearing denied October 6, 1970. Transfer denied April 13, 1971.]

*William O. Schreckengast, Kitley, Schreckengast & Davis,* of Beech Grove, *John McFadden,* of Rockville, for appellants.

*George N. Craig, Craig & Craig,* of Brazil, *Warren Buchanan,* of Rockville for appellees.

SHARP, J.—This is a quiet title action brought by the Appellees-Plaintiffs, James H. Price, Robert R. Simonson, Cornwell Treager, The Trustees of the Evangelical United

Brethern Church of Mt. Lebanon, against the Appellants-Defendants, K. K. Merryman, A. Glen O'Dell, C. David Hancock, R. H. Mueller, as Officials of the Evangelical United Brethren Church—Indiana Conference, South. The Complaint alleged:

"1. That the plaintiffs are the holders of the legal title for and on behalf of the members of the Evangelical United Brethren Church of Mt. Lebanon, located in Van Buren Township, Clay County, Indiana, and hold the legal title to the following described real estate in the County of Clay, State of Indiana for and on behalf of the members of the Evangelical United Brethren Church of Mt. Lebanon.

2. That the plaintiffs are the holders of the legal title to the hereinafter described real estate for the use of said members for church purposes. Said real estate is described as follows:

One half acre of land situated in the South East corner of section seventeen (17) township thirteen (13) range six (6) west.

3. That said real estate is now being used for church purposes and has been since the year 1891.

4. That the defendants, and each of them, are claiming an interest in said land and is attempting to assert and claim title to the same; and which said interest so claimed by defendants is adverse to plaintiffs' claim and title of said real estate.

5. That the claim of the defendants is unfounded and without right and is a cloud upon plaintiffs' title to said real estate."

The Appellants filed Answer in five legal paragraphs. The first legal paragraph was in denial under Rule 1-3 of the Rules of our Supreme Court. Paragraph II of said Answer stated:

"1. The defendants admit that the duly authorized and elected Trustees of the Evangelical United Brethren Church of Mt. Lebanon, located in Van Buren Township, Clay County, Indiana, hold the legal title to the real estate described in the Plaintiffs' complaint.

2. Defendants further say that Plaintiffs hold this legal title subject to all the terms and conditions of the Dis-

cipline of the Evangelical United Brethren Denomination, which Discipline, among other things, contains certain provisions and restrictions concerning the use of and the conveyance of said real estate, which Discipline is attached hereto, made a part hereof, and marked 'Exhibit A' for identification."

Paragraph III of Defendants' Answer stated:

"1. The defendants admit the Plaintiffs are the holders of the legal title to the real estate described in the Plaintiffs' complaint, but say that the plaintiffs hold the title as Trustees for the use and benefit of the Evangelical United Brethren Denomination as a whole, and subject to the rules and regulations of said Denomination."

Paragraph IV of said Answer sets up the defense of the statute of limitations by asserting the Plaintiffs' cause of action accrued more than fifteen years before suit was filed and summons issued. Paragraph V of answer asserts the defense of laches.

The Appellees filed Reply to Paragraph II through V of Appellants' Answer as follows:

II.

"1. That they deny the allegation contained in numerical paragraph 1.
2. That the plaintiffs deny the allegations contained in numerical paragraph 2.

III.

1. That the plaintiffs deny the defendants allegations contained in numerical paragraph 1.

IV.

The plaintiffs, for reply to numerical paragraph 1 of the defendants' Fourth Paragraph of Answer, allege and say:
1. That the plaintiffs cause of action did not accrue until it learned of the defendants' proclivity and intention to sequester and confiscate the property of various church communities and that the plaintiffs only received notice of the defendants' intention less than two years prior to the filing of this action.

## V.

The plaintiffs, for reply to Paragraph Five of Defendants' Answer, deny the allegations contained in numerical paragraph 1."

This case was tried by the court without a jury. The trial court made Special Findings of Fact and Conclusions of Law as follows:

"1. That the plaintiffs are the holders of the legal title to the real estate described herein. The same being:
One half acre of land situated in the South East corner of section seventeen (17) township thirteen (13) range six (6) west

2. That the plaintiffs are the holders of the legal title to the above described real estate for the use of church purposes.

3. That said real estate is now being used for church purposes and has been since the year 1891.

4. That in the year 1891, on the 24th day of December Franklin Casteel and Martha A. Casteel conveyed the above described real estate by Warranty Deed to P. J. Poff, B. F. Cornwell and Franklin Casteel, Trustees of Mt. Lebanon U. B. Church of Indiana.

5. The Deed provides that if said land ever ceases to be used for said church purposes, the same to revert to its original owners, or their heirs.

6. That in the year 1891 the defendant, Evangelical United Brethren Church was not in existence.

7. That the Evangelical United Brethren Church was not formed until November 16, 1946.

8. The Court further finds that there is no interpretation, explanation or designation of what denomination Mt. Lebanon U. B. Church was in 1891.

9. That the plaintiffs herein are the duly elected Trustees of the Mt. Lebanon Church.

10. That the defendants, and each of them, are claiming an interest in said land and is attempting to assert and claim title to the same and which said interest so claimed by the defendants, is adverse to plaintiffs' claim and title to said real estate.

11. That the plaintiffs herein learned of the defendants' claim to this real estate on or about the 22nd day of May,

1967, when the defendants herein filed suit against the Trustees of the Ebenezer Church, located some two and one-half miles distant and that thereafter. these Trustee plaintiffs, filed this action in the Clay Circuit Court on June 30, 1967.

12. That at the time the claim of defendants was made to the property herein, the plaintiffs were in possession of the same.

And as conclusions of law upon the facts, the Court states:

1. That the law is with the plaintiffs.

2. That the claim of the defendants is unfounded and without right and is a cloud upon plaintiffs' title to said real estate.

3. That the claim of the plaintiffs, herein has not been barred by either the Statute of Limitations or by Laches.

4. That the title to said real estate described in plaintiffs' complaint should be quieted in the plaintiffs herein.

5. That the defendants herein have no right, title, claim, interest in and to the real estate described in plaintiffs' Complaint.

The same being:

> One-half acre of land situated in the South East Corner of section seventeen (17) township thirteen (13) range six (6) west.

6. That the plaintiffs herein have their recovery of costs laid out and expended."

Judgment was entered for the Appellees quieting title to said real estate in the Appellees.

The Appellants filed Motion for a New Trial together with Memorandum under Rule 1-14-B of the Rules of our Supreme Court, which Motion was overruled. The overruling of said Motion for a New Trial is the sole assignment of error here.

We will consider the grounds stated in the Appellants' Motion for a New Trial which are preserved and argued in their Briefs.

Those contentions are:

"1. The decision of the Court is not sustained by sufficient evidence.

2. The decision of the Court is contrary to law.

3. The decision of the Court is not sustained by sufficient evidence or is contrary to law.

4. That the Court erred in its conclusion of law number one (1).

5. That the Court erred in its conclusion of law number two (2).

6. That the Court erred in its conclusion of law number three (3).

7. That the Court erred in its conclusion of law number four (4).

8. That the Court erred in its conclusion of law number five (5).

9. That the Court erred in its conclusion of law number six (6).

10. That the Court erred in overruling the defendants' motion for finding at the close of plaintiffs' evidence in chief."

In addition the Appellants argue two errors at law in their Motion for a New Trial which occurred at the trial and are concerned with the admission of certain evidence.

The evidence disclosed that the real estate in question was conveyed by a deed dated December 24, 1891, and that the pertinent language of such deed is as follows:

"THIS INDENTURE WITNESSETH, That Franklin Casteel and Martha A. Casteel, his wife, of Clay County in the State of Indiana, CONVEY AND WARRANT to P. J. Poff, B. F. Cornwell and Franklin Casteel, Trustees of Mt. Lebanon U.B. Church of Clay County in the State of Indiana for the sum of One Dollar, the receipt of which is hereby acknowledged, the following Real Estate in Clay County in the State of Indiana, to-wit:

One half acre of land situated in the South East corner of section seventeen (17) township thirteen (13) range six (6) west.

The same to be used for church purposes and if said land ever ceases to be used for said church purposes, the same to revert to its original owners, or their heirs."

Evidence was introduced that the church building on the property in question was constructed in or about the year

1887 and the Appellees, James H. Price, Robert R. Simonson and Cornwell Treager are trustees of the Mt. Lebanon Evangelical United Brethren Church, which is referred to locally as the Mt. Lebanon U. B. Church or simply the Mt. Lebanon Church. There was testimony that the church building on the real estate in question had been used continuously as a house of worship since 1891. There was also testimony that in 1946 the Evangelical Church and the United Brethren Church merged and became the Evangelical United Brethren Church. There was also further testimony that the Appellant, Evangelical United Brethren Church—Indiana Conference South, claimed an interest in the real estate here in question. Mr. Ralph McQueen testified that he had lived in the vicinity of the Mt. Lebanon Church for over 72 years and had been a member of the Ebeneezer United Brethren Church which is approximately two miles from the Mt. Lebanon Church and that he was a trustee in the Ebeneezer Church on the 25th of May, 1967. He further testified that on the 25th of May, 1967, the Appellant, Evangelical United Brethren Church—Indiana Conference South, filed a lawsuit against the trustees of the Ebeneezer Church to quiet title and take possession of its property. The Discipline of the Evangelical United Brethren Church, which became effective in 1947, was introduced into evidence by the Appellants. The Appellants direct our attention specifically to Paragraph 805 of said Discipline, which reads as follows:

> "In all conveyances of real estate, held, owned, or acquired by the local church for a house of worship the following trust clause shall be inserted in the proper place: 'In trust that said premises shall be kept and maintained as a place of worship for the use of the Evangelical United Brethren Church, subject to the doctrines, laws, uses and ministerial appointments of the Evangelical United Brethren Church as from time to time established, made and declared by the lawful authority of such church, with a right to sell, or encumber subject to the Discipline of the Evangelical United Brethren Church and the laws of the state of ——————, and if said property be sold or en-

cumbered the proceeds of the sale or encumbrance shall be applied to the use of the aforesaid church, subject, however, to the provisions of the laws of the Evangelical United Brethren Church relating to the sale and encumbrances of houses of worship and their premises, their being no obligation on the part of any purchaser to see to the application of the purchase money."

Appellants also emphasized Paragraph 681 of said Discipline, which states:

"All conveyances of property to this Corporation shall be deeded in trust to be used, kept, maintained, and disposed of, for the use and benefit of the ministry and membership of The Evangelical United Brethren Church. All real estate of the Corporation, held in trust for The Evangelical United Brethren Church, shall be sold and conveyed by the said Trustees in the corporate name thereof, when the said Trustees are authorized to do so by the Corporation and the Annual Conference in whose bounds the Corporation is situated; provided, however, that any and all property owned by a Local Church at the time of the union of The Church of the United Brethren in Christ and The Evangelical Church, shall, in respect to this authorization by the Annual Conference, be held and may be disposed of according to the laws of the State, Province, or Country where located, by the Board of Trustees of said Local Church, when authorized by said Local Church, subject, however, to the provisions in the deed by which such property was acquired by such Local Church, and under it claimed title to such property at the time of said union."

Appellants also offered a 1967 Discipline into evidence and the 1967 Discipline is precisely the same with reference to the contents of the above quoted Paragraphs 805 and 681.

In requesting this court to review the decision of the trial court the Appellants rely almost entirely on an interpretation of the quoted paragraphs of the Discipline of the Evangelical United Brethren Church in 1947 and 1967. The contention of the Appellees is best summed up with the following statement appearing in the next to the last paragraph of their Brief, which states:

"In conclusion, Appellees emphasize that the matter now before this Court does not involve itself with the internal workings, Declaration of Faith, nor Discipline of the church. It is only asked to *determine a matter of law in a suit to quiet title, which is not now, nor has it ever been, the jurisdiction of church officials.*" (Appellees' emphasis)

On appeal this court accepts the ultimate facts as stated by the trial court if there is evidence to sustain them. *Carpenter* v. *Wisniewski,* 139 Ind. App. 325, 215 N. E. 2d 882 (1966). All intendments are taken in favor of the findings. *Jones* v. *Greiger,* 130 Ind. App. 526, 166 N. E. 2d 868 (1960).

Where the special findings of fact are not challenged by a motion for a new trial the appellant admits for purpose of appeal generally the facts that are correctly found. Where alleged error is presented in the conclusion of law this court may not consider the evidence but only the findings of fact. The special findings of fact are accepted as true. See Wiltrout, Indiana Practice, § 1664 and the cases cited therein.

At the outset we must emphasize the nature of this dispute. It is a dispute over the title to real estate and particularly the effect of the provisions of the deed in question which was executed in the year 1891. It is not the function of this court or any other civil court to referee internal disputes regarding church doctrine. However, it is the proper function of this court and other civil courts to determine a civil dispute regarding title to real estate even though the litigants are parties to an internal dispute regarding other religious matters. An example of the application of these principles is found in *Lindsay* v. *Wigal,* 145 Ind. App. 338, 250 N. E. 2d 755 (1969). We must also emphasize that our decision on the merits of this case does not indicate any opinion as to the merits of other controversies between the parties litigant. The line between these two functions is summed up by the Supreme Court of the United States in *Presbyterian Church of the United States* v.

*Mary Elizabeth Blue Hull Memorial Presbyterian Church,*
393 U.S. 440, 89 S. Ct. 601, 21 Law Ed. 2d 658 (1969), where
the court stated:

> "Thus, the First Amendment severely circumscribes the
> role that civil courts may play in resolving church property
> disputes. It is obvious, however, that not every civil court
> decision as to property claimed by a religious organization
> jeopardizes values protected by the First Amendment. Civil
> courts do not inhibit free exercise of religion merely by
> opening their doors to disputes involving church property.
> And there are neutral principles of law, developed for use
> in all property disputes, which can be applied without
> 'establishing' churches to which property is awarded. But
> First Amendment values are plainly jeopardized when
> church property litigation is made to turn on the resolution
> by civil courts of controversies over religious doctrine and
> practice. If civil courts undertaken to resolve such con-
> troversies in order to adjudicate the property dispute, the
> hazards are ever present of inhibiting the free develop-
> ment of religious doctrine and of implicating secular in-
> terests in matters of purely ecclesiastical concern.

* * *

The Georgia courts have violated the command of the
First Amendment. The departure-from-doctrine element
of the implied theory which they applied requires the civil
judiciary to determine whether actions of the general
church constitute such a 'substantial departure' from the
tenets of faith and practice existing at the time of the
local churches' affiliation that the trust in favor of the
general church must be declared to have terminated. This
determination has two parts. The civil court must first
decide whether the challenged actions of the general church
depart substantially from prior doctrine. In reaching such
a decision, the court must of necessity make its own in-
terpretation of the meaning of church doctrines. If the
court should decide that a substantial departure has oc-
curred, it must then go on to determine whether the issue
on which the general church has departed holds a place of
such importance in the traditional theology as to require
that the trust be terminated. A civil court can make this
determination only after assessing the relative significance
to the religion of the tenets from which departure was
found. Thus, the departure-from-doctrine element of the
Georgia implied trust theory requires the civil court to

determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role.

Since the Georgia courts on remand may undertake to determine whether petitioner is entitled to relief on its cross-claims, we find it appropriate to remark that the departure-from-doctrine element of Georgia's implied trust theory can play no role in any future judicial proceedings. The departure-from-doctrine approach is not susceptible of the marginal judicial involvement contemplated in Gonzalez. Gonzalez' rights under a will turned on a church decision, the Archbishop's, as to church law, the qualifications for the chaplaincy. It was the archbishopric, not the civil courts, which had the task of analyzing and interpreting church law in order to determine the validity of Gonzalez' claim to a chaplaincy. Thus, the civil courts could adjudicate the rights under the will without interpreting or weighing church doctrine but simply by engaging in the narrowest kind of review of a specific church decision—i.e., whether that decision resulted from fraud, collusion, or arbitrariness. Such review does not inject the civil courts into substantive ecclesiastical matters. In contrast, under Georgia's departure-from-doctrine approach, it is not possible for the civil courts to play so limited a role. Under this approach, property rights do not turn on a church decision as to church doctrine. The standard of departure-from-doctrine, though it calls for resolution of ecclesiastical questions, is a creation of state, not church, law. Nothing in the record suggests that this state standard has been interpreted and applied in a decision of the general church. Any decisions which have been made by the general church about the local churches' withdrawal have at most a tangential relationship to the state-fashioned departure-from-doctrine standard. A determination whether such decisions are fraudulent, collusive, or arbitrary would therefore not answer the questions posed by the state standard. To reach those questions would require the civil courts to engage in the forbidden process of interpreting and weighing church doctrine. Even if the general church had attempted to apply the state standard, the civil courts could not review and enforce the church decision without violating the Constitution. The First Amendment prohibits a State from employing religious organizations as an arm of the civil

judiciary to perform the function of interpreting and applying state standards."

On a remand to the Supreme Court of Georgia that court stated in *Presbyterian Church of the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 225 Ga. 259, 167 S.E. 2d 658 at page 659:

"1. Under Georgia law, insofar as churches with a connective form of government are concerned, there has been implied a trust on local church property for the benefit of the general church, but as a part of this rule the implied trust has been conditioned on the general church adhering to its tenets of faith and practice existing at the time of affiliation by the local church. See Mack v. Kime, 129 Ga. 1, 58 S.E. 184, 24 L.R.A., N.S., 675; Code § 22-408. In our review of these cases, we applied this rule of law.

However, the United States Supreme Court, in reviewing our decision, held that although civil courts are the proper forum for resolving property disputes, the First Amendment to the United States Constitution forbids them from determining ecclesiastical questions in the process. For this reason, it reversed our decision, stating that 'the departure-from-doctrine element of Georgia's implied trust theory can play no role in any future judicial proceedings.'

This being the case, the entire theory must fall. Since Georgia chose to adopt the implied trust theory *with* this element as a condition, this court must assume that it would not have adopted the theory without this mode of protecting the local churches.

Therefore, a part of the rule having been stricken, the remainder falls with it, and there is no implied trust on the property in controversy. There was no other basis for a trust in favor of the general church, none being created by the deeds on the property, implied under the statutes of this State (Code §§ 108-106, 108-107), or required by the constitution of the general church. It will be remembered that the general church put no funds into this property.

2. We are thus brought to a determination of where the legal title lies, which determination civil courts can make.

As to this the facts shown by the record are not in dispute.

The Eastern Heights Church initially in 1930 acquired a part of its property from the Independent Presbyterian

Church of Savannah by a deed naming as grantee 'Eastern Heights Presbyterian Church, a religious corporation.' Two other tracts were later obtained by it, the deeds thereto designating as grantees certain persons as 'Trustees of the Eastern Heights Presbyterian Church, and their successors in office,' one of these providing that the property was to be held in trust 'for the use and benefit of the congregation of the Eastern Heights Presbyterian Church.'

The Hull Memorial Church acquired a portion of its property in 1914 by a deed naming the Mary Elizabeth Blue Hull Memorial Presbyterian Church as grantee and reciting that the property was to be used as a place of worship by a church of the Presbyterian denomination known as the named church. Subsequently other property was conveyed to it by deeds also naming the Hull Memorial Church itself as grantee.

In view of the foregoing, the legal title to the property is in the respective local churches."

On January 19, 1970, the Supreme Court of the United States denied certiorari upon the above quoted opinion by the Supreme Court of Georgia on remand. See 24 Law Ed. 2d 685.

In *Gonzalez* v. *Roman Catholic Archbishop of Manila,* 280 U.S. 1, 50 S. Ct. 5, 74 Law Ed. 131 (1929), the Supreme Court of the United States applied the doctrine of non-intervention by holding that the courts could review ecclesiastical decisions which were fraudulent, collusive or arbitrary. See also, *Kedroff* v. *St. Nicholas Cathedral of Russian Orthodox Church of North America,* 344 U.S. 94, 73 S. Ct. 143, 97 Law Ed. 120 (1952).

The total impact of the case of *Presbyterian Church of the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra,* must certainly be considered in the light of the fact that on remand the Supreme Court of Georgia adjudicated the dispute by the application of neutral principles of real property law.

The Appellants cite and rely on *Doughty* v. *Herr,* 97 Ind. App. 427, 185 N. E. 657 (1933). Both the reasoning and result in *Doughty* v. *Herr, supra,* are absolutely contrary to

the Appellants' position in this case. In that case the trial court refused to impose a trust in favor of the general church upon real estate owned under a deed, the provisions of which are basically similar to the one in the present case. Likewise, the Appellants cite and rely on *The Indiana Annual Conference Corp., et al* v. *Lemon, etc.*, 235 Ind. 163, 167, 131 N. E. 2d 780 (1955), in which Judge Arterburn, speaking for our Supreme Court, laid down the following guidelines:

"The appellee, John W. Lemon, sole surviving trustee, made out a prima facie case when he showed he had the record legal title of the church property in his name. The question then arises, was this prima facie case fully rebutted such that the trial court was left without discretion in the matter. The appellants contend that under the Church Discipline of the Methodist Church (originally the Methodist Episcopal Church) that the proper proceedings were had which placed the title and all beneficial interest in superior organizations of the Methodist Church so that its authorities could dispose of the church property and particularly the church building in question. Koss v. Continental Oil Co. (1944), 222 Ind. 224, 52 N. E. 2d 614; People Gas Company, et al v. Tyner (1892), 131 Ind. 277, 31 N. E. 59, 16 L.R.A. 443; Wise v. Curdes (1942), 219 Ind. 606, 40 N. E. 2d 122; Pub. Ser. Com. v. Indpls. Railways (1947), 225 Ind. 30, 72 N. E. 2d 434.

This case is to be distinguished from Doughty v. Herr (1933), 97 Ind. App. 427, 185 N. E. 657, where a deed was made to 'Trustees of Union Chapel of Hancock County, in the state of Indiana.' In that case the deed was made to a particular local church not referred to as a part of the larger church organization. In the case before us the deed was made to a church which was an integral part of the then Methodist Episcopal Church (now Methodist Church). It is also true, where a local church of a larger church organization of faith is dissolved or abandoned, the church property vests in the superior or larger organization of that faith *if the Church Discipline, by-laws or regulations so provide*. 76 C.J.S., Religious Societies, § 100 pp. 889, 890; Trustees of New Hampshire A.C. Methodist Church v. Methodist Church (1954), 98 N.H. 498, 104 A. 2d 204; Brooks v. Chinn (1951), La. App., 52 So. 2d 583; Board of Trustees v. Rader (1930), 210 Iowa 482, 231 N.W.

329; Hardin et al. v. Starnes et al. (1949), 32 Tenn. App. 66, 221 S.W. 2d 824.

However, in this case, the evidence seems to us confusing and uncertain, both as to application of the Church Discipline and as to whether or not the Church Discipline was followed as to the formalities necessary to transfer title."

In this case it is clear that Appellees made out a prima facie case with reference to the legal title to this property. This conclusion is readily supported by the pleadings and evidence. The burden then shifted to the Appellants to demonstrate their right and interest in this property. The trial court obviously determined the Appellants failed to sustain this burden.

The Appellants rely primarily on *Presbytery of Indianapolis* v. *First United Presbyterian Church*, 143 Ind. App. 72, 238 N. E. 2d 479, opinion on rehearing 240 N. E. 2d 77 (1968), in which case there were several important facts present which are absent here. In it there was clear evidence as to the existence of the general church at the time the deeds in question were executed. Further and more important, the general church had invested substantial resources in buildings and improvements on the real estate in question. The dispute with reference to the title to real estate had been adjudicated through ecclesiastical procedures to the highest ecclesiastical tribunal within the framework of the general church. Also, the Discipline of the general church in the *Presbytery of Indianapolis* case contained no language comparable to the following provision of Paragraph 681 of the Discipline of the Evangelical United Brethren Church referred to above:

"Provided, however, that any and all property owned by a Local Church at the time of the union of The Church of the United Brethren in Christ and The Evangelical Church, shall, in respect to this authorization by the Annual Conference, be held and may be disposed of according to the laws of the State, Province, or Country where located, by the Board of Trustees of said Local Church,

when authorized by said Local Church, subject, however, to the provisions in the deed by which such property was acquired by such Local Church, and under it claimed title to such property at the time of said union."

In the present case there was no attempt by either side to exhaust ecclesiastical remedies as to the title of said real estate. In fact, it is clear that the Appellant general church was quite willing to submit this dispute, including its ecclesiastical aspects, to the jurisdiction of the civil court. It is also important to emphasize in this instant case that there is absolutely no dispute that the Appellees are, in fact, the rightful legal successors in interest to the grantees of the deed executed in 1891.

One can best understand the real import of the *Presbytery of Indianapolis* case by a consideration, in part, of this court's opinion on rehearing at 240 N. E. 2d 77, in which the court stated:

"The crux of the opinion is to the effect that a withdrawal by a subordinate congregation from the parent or general church organization, and in so doing attempting to take with it the church property being held in trust by it from the general church organization, is neither supported by the ecclesiastical law of the church nor by the civil law."

We must also consider what effect, if any, the *Mary Elizabeth Blue Hull* case, decided by the Supreme Court of the United States and on remand by the Supreme Court of Georgia, has on the *Presbytery of Indianapolis* case. The total impact of the *Mary Elizabeth Blue Hull* case as decided by the Supreme Court of the United States and by the Supreme Court of Georgia on remand is to render impotent the implied trust theory in so far as such theory is based upon principles of ecclesiastical law, church doctrine, or church discipline. It is clear that the civil courts cannot rely upon ecclesiastical law of the church to impose an implied trust upon real estate. To the extent that the *Presbytery of Indianapolis* case imposed an implied trust and based such imposition upon

principles of ecclesiastical law and church doctrine, the same cannot stand in view of the decisions in the *Mary Elizabeth Blue Hull* case. (It may still be possible to reach the same result in the *Presbytery of Indianapolis* case by the use of neutral principles of civil property law without reference to ecclesiastical law or church doctrine, particularly in view of the substantial investment of money by the general church which was present in the *Presbytery of Indianapolis* case.)

In short, the position of the Appellants in this case cannot be sustained without reference to ecclesiastical law, church discipline or church doctrine. It is equally clear that the result in this case sought by the Appellees can be justified on neutral principles of property law without reference to ecclesiastical law, church discipline or church doctrine.

The application which we make of the *Mary Elizabeth Blue Hull* case is generally consistent with that which other courts have made. See *Berkaw v. Mayflower Congregational Church,* 18 Mich. App. 245, 170 N. E. 2d 905 (1969); *Pilgrim Holiness Church v. First Pilgrim Holiness Church,* 115 Ill. App. 2d 448, 252 N. E. 2d 1 (1969); *Serbian Orthodox Church Congregation of St. Demetrius v. Kelemen,* 21 Ohio St. 2d 154, 256 N. E. 2d 212 (1969); and *Md. & Va. Eldership v. Sharpsburg,* 254 Md. 162, 254 A. 2d 164 (1969).

The above cases together with the *Mary Elizabeth Blue Hull* case strongly indicate a preference for what has been described "formal title" approach to church property controversies. See Comment, 54 Iowa L. Rev. 899, 907 (1969). Under this approach the title holder of property has the right to determine the use of the property with neither theology nor administrative church law relevant. The civil courts under this theory will enforce deeds, reverter clauses, and general state corporation laws in the same manner as in resolving any other property dispute. This approach has the advantage of almost never involving a civil court with the vexing problem of whether proferred evidence is

admissible under the First Amendment. Further, adjudicating church property disputes by relying on formal title will insure an almost evenhanded administration of justice since the necessary evidence will almost always be admissible. The formal title approach will seldom involve a civil court in deciding what the polity of a given church is, a determination which will almost inevitably involve ecclesiastical considerations. One final advantage inherent in this approach is that it invites and encourages religious organizations to title their property as clearly and unambiguously as possible. Such a result was obviously within the contemplation of the *Mary Elizabeth Blue Hull* case wherein the Supreme Court of the United States admonishes "religious organizations and individuals must structure relationships involving church property so as not to require civil courts to resolve ecclesiastical questions." 393 U.S. at 449, 89 S. Ct. at 606, 21 Law Ed. 2d at 665.

The Appellants argue two specifications of error with reference to the admission of evidence over objection.

The witness, Cornwell Treager, was asked the following question:

"I will ask you to state whether or not the congregation of Mt. Lebanon is still in possession of the real estate that is set forth here in the complaint and in controversy."

The objection of the Appellants is as follows:

"Just a moment, sir. Judge, I am going to object. He's asked an original question he should have asked upon direct examination. He has a right to redirect, not to direct. Further objection, your Honor, calls for a legal conclusion on the part of this witness. Possession is a word of magic in legal art and it asks this witness if you were in possession. That's a legal question your Honor".

The witness answered "Yes". It is obvious that the Appellants made a very general objection. The general objection is

too vague to preserve any question for appeal. See *Schobey* v. *Smith,* 142 Ind. App. 483, 235 N. E. 2d 495 (1968). A general objection may be sustained only where the evidence is patently not admissible on any basis. *Plank* v. *Combs,* 84 Ind. App. 446, 151 N. E. 342 (1926). There was no error in the admission of this testimony.

The Appellants further complain of error in permitting the Appellees to elicit from Appellants' witness, on cross-examination, evidence relating to certain resolutions of the National Council of Churches. In regard to the admission of this evidence the trial judge stated at the time:

> "You know, the Court doesn't have to consider evidence if he don't think it's competent, whether there are objections made or not. I'm following that rule in this case. He can answer the question."

In *McGlennan* v. *Margowski,* 90 Ind. 150, at page 157, our Supreme Court stated:

> "Besides, it is stated in the bill of exceptions, that 'the court did not consider the testimony objected to, and so announced to the parties at the time such testimony was given.' The error of the court, in the admission of such testimony, if it were such, was, therefore, a harmless error, and the judgment will not be reversed for such an error."

In *Winfrey et al.* v. *State Life Ins. Co. et al.,* 227 Ind. 449 454, 85 N. E. 2d 821, Judge Emmert, speaking for our Supreme Court, stated:

> "The case was tried by the judge without a jury and the record affirmatively shows that this testimony could not have influenced the finding, since no part of the finding is based upon it. The evidence was not of an influential character on any material point which tended to prejudice appellants' case. Shaughnessey v. Jordan (1916), 184 Ind. 499, 111 N. E. 622, Kaczmarczyk v. Dolato (1922), 191 Ind. 540, 133 N. E. 829."

See also, *Schemmel* v. *Hill,* 91 Ind. App. 373, 169 N. E. 678 (1929) ; *Kostas* v. *Zaracostas,* 118 Ind. App. 425, 75 N. E.

2d 423 (1947) ; and *Miller et al.* v. *Dill et al.,* 149 Ind. 326, 49 N. E. 272 (1898).

There is absolutely no indication that the evidence which the trial judge admitted with reference to the resolutions of the National Council of Churches in any way formed the basis for any of the trial court's findings in this case and it affirmatively appears in the record from the comments of the trial judge that such evidence in no way tended to influence his decision. The judge who tried this case is one of the most experienced and distinguished members of the trial judiciary of the State of Indiana. In a judge tried case such as this, he was perfectly capable of considering only competent evidence in arriving at his decision. The findings indicated that he confined his decision to such competent evidence.

Appellants further contend that the cause of action of the Appellees accrued more than fifteen years before the filing of the complaint and the issuance of summons and is therefore barred by the Statute of Limitations as found in Burns' Indiana Statutes Annotated, § 2-603.

The evidence of Mr. Ralph McQueen and the inferences therefrom, together with the evidence of David Hancock to the effect that the Appellants were claiming an interest in the real estate are relevant to this issue. From this testimony it can be inferred that the Appellees filed the present action within approximately 35 days after they received notice that the Appellants were claiming an interest in the within real estate. The Statute of Limitations does not begin to run in favor of a defendant in an action to quiet title or to remove a cloud until some assertion of right or title has been made by a defendant and until such assertion of right or title has been brought to the knowledge of the plaintiff. See *Hegarty* v. *Curtis*, 121 Ind. App. 74, 95 N. E. 2d 706 (1950). Therefore, considering the evidence and the inferences most favorable to the Appellees we cannot

say as a matter of law that the cause of action of the Appellees was barred by the Statute of Limitations.

Lastly, the Appellants claimed that the cause of action of the Appellees is barred by the defense of laches. The only case cited by the Appellants to support this proposition is *Michie* v. *DeLaurier*, 7 Ind. Dec. 18 (N.D. Ind. 1965). In that case Judge Beamer stated:

> "In the case at bar, the applicable statute of limitations is fifteen years as indicated in an earlier part of this opinion. It is well settled in Indiana that the right to prosecute an action may be barred by laches in less time than that fixed by the statute of limitations only where the laches and circumstances are of such a character as to constitute an equitable estoppel. *Scherer* v. *Ingerman*, 110 Ind. 428, 11 N. E. 8 (1887) ; *Brake* v. *Payne*, 137 Ind. 479, 37 N. E. 140 (1894) ; *Hegarty* v. *Curtis*, 121 Ind. 74, 95 N. E. 2d 706 (1950). Ordinarily, litigants have the full period of the statute of limitations to assert their rights. *Brake* v. *Payne*, supra; *Scherer* v. *Ingerman*, supra; *Harper* v. *Terry*, 70 Ind. 264 (1880), 7 Ind. Dec. at 40.
>
> \* \* \*
>
> Although the defense of laches may often involve factual issues, the mere assertion of this defense and a change in circumstances without a sufficient allegation of how plaintiffs' delay caused prejudice to the defendants within the meaning of the laches doctrine under state law will not preclude summary judgment. *Reconstruction Finance Corp.* v. *Goldberg*, 143 F. 2d 752 (7th Cir. 1944) cert. den. 323 U. S. 770.
>
> Therefore, the court concludes that the doctrine of laches cannot and should not be applied in this case." 7 Ind. Dec. at 41.

The *Michie* case is absolutely no authority for the Appellants' contention and in fact its language and holding are contrary to the Appellants' position.

In view of the evidence considered in the light most favorable to the Appellees they were not aware of the Appellants' claim until 35 days before this action was commenced. The decision of the trial court which explicitly rejects the defense of laches is within the evidence and is not contrary to law.

From a careful examination of the Briefs and the complete record in this case we have determined that the case was fairly tried and a just result reached. There being no reversible error in this case the same should be and hereby is affirmed.

Hoffman, P.J., Pfaff, J., concur.

White, J., dissents with opinion.

## DISSENTING OPINION

WHITE, J.—It is conceded that the plaintiff-appellees "made out a *prima facie* case with reference to the legal title to this property."[1] That title was, in fact, conceded before the trial began.[2] It is also conceded "that the Appellees are, in fact, the rightful legal successors in interest to the grantees of the deed executed in 1891."[3]

The appellees are, by their own description in the captions of their own complaint, pleadings, and briefs "The Trustees of the Evangelical United Brethren Church of Mt. Lebanon." The 1891 grantees were "Trustees of Mt. Lebanon U. B. Church of Clay County in the State of Indiana."[4] Thus it logically follows that what was in 1891 the "Mt. Lebanon U. B. Church of Clay County" is now the "Evangelical United Brethren Church of Mt. Lebanon".[5]

Plaintiff appellees are, and the original grantees were, both merely *trustees*. It is, I should think, axiomatic that trustees of any organization must perform the duties of their office in conformity to the legally adopted rules of their organization.[6] And that is what this lawsuit was all about. Not the

---

1. Majority opinion, *ante,* p. 295.
2. The mere fact that defendant-appellants' first paragraph of answer denied all the allegations of the complaint does not negate the practical reality and factual truth of this statement.
3. Majority opinion, *ante,* p. 295.
4. The majority opinion quotes the deeds, *ante,* p. 301.
5. If that is not true plaintiff-appellees have no case.
6. Which is not to say that acts of trustees not in conformity with such rules may not bind the organization or that persons dealing with the trustees must, at their peril, determine whether such trustees are acting in conformity to such rules. *McCrary* v. *McFarland* (1884) 93

legal title; it was never in dispute. Only the rules were in dispute.

It was the "claim" of the defendant-appellants (the "Claim" which the trial court held to be "unfounded and without right") that (1) plaintiff-appellees "hold this legal title subject to all the terms and conditions of the Discipline of the Evangelical United Brethren Denomination, which Discipline, among other things, contains certain provisions and restrictions concerning the use of and the conveyance of said real estate . . ."[7] and/or (2) plaintiff-appellees "hold the title as Trustees for the use and benefit of the Evangelical United Brethren Denomination as a whole, and subject to the rules and regulations of said Denomination."[8] If, as the court held, this claim is "unfounded and without right", the local congregation is left free to regulate and direct the trustees, wholly unhampered by the Discipline (in this respect the "polity") of the larger denomination. That is precisely the legal effect of the judgment the majority today affirms.

The defendants offered as evidence the "Discipline" of the Evangelical United Brethren Denomination and the same was admitted without objection by the plaintiffs. No evidence was offered by plaintiffs, or received from any source, to the effect that the rules and regulations of the denomination were not those stated in said Discipline. Plaintiffs made a written pre-trial admission that "they are members of the Evangelical United Brethren Church" and offered no evidence that this was not the same denomination. On the contrary, they

---

Ind. 466; *Trustees of M.E. Church* v. *Shulze* (1878), 61 Ind. 511; 1 R.S. 1852, ch. 101, § 13, p. 458, being also Burns IND. STAT. ANN. (1960 Rpl.) § 25-1515. This lawsuit is between officers of the organization and, as the issues were framed and tried, involves their rights and powers as between themselves and not as between the trustees and outsiders, as in *Doughty* v. *Herr*, cited and discussed *post*. See note 10.

7. Defendant-appellants' Paragraph II of Answer quoted by the majority, *ante*, p. 297.

8. Defendant-appellants' Paragraph III of Answer quoted by the majority, *ante*, p. 298.

testified on cross-examination to acts of participation by the local church congregation in very recent years in the functions of the denomination. There was other evidence brought out by defendants, both from their own witnesses and by cross-examination of plaintiffs' witnesses (including plaintiffs themselves) tending to support defendants' claim that the Mt. Lebanon Church was a part of the Evangelical United Brethren Church denomination and that plaintiffs, as its trustees, were subject to the rules of that denomination. Yet notwithstanding that evidence and in spite of the fact that appellees have failed to point out any contradictory evidence, the trial court made no findings of fact relative to the ultimate facts which such evidence tended to prove.

The trial court apparently adopted the argument made by plaintiffs to the effect that the title was fixed at the time the deed of 1891 was made; that since there was no evidence as to what denomination the Mt. Lebanon Church was a part of at that time, if any,[9] the defendants had failed to prove that the plaintiff-trustees held title subject to the rules of the Evangelical United Brethren denomination. This theory is premised on the cryptic reasoning voiced by way of *dicta* in a concurring opinion in *Ind. Annual Conf.* v. *Lemon* (1956), 235 Ind. 163, 172, 131 N. E. 2d 780, as follows:

"However, it would seem that whatever authority the superior Methodist Church may have over this real estate will depend upon what its Church Discipline or constitution and by-laws provided at the time the deeds were executed. It would be a denial of due process for the General Assembly to attempt to divest title by subsequent legislative act, and it naturally follows that a superior church organization could have no greater power than a sovereign Legislature. A deed is generally held to be within the protection of the contract clause against impairment. *Edwards* v. *Jagers* (1862), 19 Ind. 407."

9. This finding ignores inferences which could be drawn from evidence that over fifty years prior to trial, less than thirty years after the deed was executed, the church and its members were of the United Brethren denomination.

And plaintiffs rely on *dicta* in *Doughty* v. *Herr* (1933), 97 Ind. App. 427, 430, 185 N. E. 657, quoted from two Illinois cases, as follows:

" 'Where a deed to trustees for the benefit of a church society contains no express declaration of trust for the general body of any church denomination, or for the teaching or practice of any particular religious principles or doctrines of faith, the right to the possession, control, and use of the property is solely in the members of the church society. This conveyance was for the sole benefit of the organizations whose trustees were named as grantees, and the right, title, possession, control, and use of the property were vested solely in them. The deed contained no clause providing for a reverter; therefore the heirs of Lupton had no interest.' *Glader et al.* v. *Schwinge et al.* (1929), 336 Ill. 551, 168 N. E. 658, 600, 66 A.L.R. 172.

"In the instant case the trustees of Union Chappel were elected in 1909 and 1927 and there would be no need for appointment by the court. The above quoted case follows and amplifies an earlier Illinois case which uses this language: 'Though the grantees in the deeds were not incorporated, the deeds were not void, but all the members of the respective congregations became beneficiaries of the property. Such deeds are solely for the benefit of the congregations whose trustees are named as the grantees, and the right to possession, control, and use of the property is vested solely in them. It may be that these congregations were subject to the discipline of the Reformed Church, but their property was not subject to the control of that church.' *Illinois Classis of Reformed Church in the United States* v. *Holben, et al.* (1919), 286 Ill. 473, 122 N. E. 46, 47."[10]

---

10. Even though *Doughty v. Herr* expressly states that the reasoning of these two Illinois cases is decisive of the dispute in *Doughty*, it is apparent that much of that reasoning is far removed from what was actually decided in *Doughty*. The opinion is disorganized and confusing in its recital of the facts and the record, but it was a quiet title action by the "Trustees of Union Chappel of Hancock County" against Myrtle Herr, to whom the church property was conveyed by trustees elected by the quarterly conference although there were duly elected trustees of Union Chappel. The true holding in *Doughty* is this paragraph beginning on page 429 of 97 Ind. App.:

"There is an attempt here to show that Union Chappel was but a unit in a large governing body and that the conference really had control of all the affairs of the local unit. As to the faith followed, this was probably true. However, this realty was deeded to 'Trustees

The majority opinion in *Ind. Annual Conf.* v. *Lemon, supra,* (235 Ind. at 168) counters the *dicta* of the concurring opinion and distinguishes *Doughty* v. *Herr, supra,* (97 Ind. App. 427) on grounds which also bear on the case at bar:

> "This case is to be distinguished from *Doughty* v. *Herr* (1933), 97 Ind. App 427, 185 N. E. 657, where a deed was made to 'Trustees of Union Chapel (sic) of Hancock County, in the state of Indiana.' In that case the deed was made to a particular local church not referred to as a part of a larger church organization. In the case before us the deed was made to a church which was an integral part of the then Methodist Episcopal Church (now Methodist Church). It is also true, where a local church of a larger church organization of faith is dissolved or abandoned, the church property vests in the superior or larger organization of that faith *if the Church Discipline, by-laws or regulations so provide.* 76 C.J.S., Religious Societies, § 100 pp. 889, 890; *Trustees of New Hampshire A. C. Methodist Church* v. *Methodist Church* (1954), 98 N. H. 498, 104 A. 2d 204; *Brooks* v. *Chinn* (1951), La. App., 52 So. 2d 583; *Board of Trustees* v. *Rader* (1930), 210 Iowa 482, 231 N. W. 329; *Hardin et al.* v. *Starnes et al.* (1949), 32 Tenn. App. 66, 221 S. W. 2d 824."

The Illinois cases quoted in *Doughty* are not in harmony with the rationale of the majority in *Ind. Annual Conference* or in later decisions by the Appellate Court, particularly *Presbytery of Indianapolis* v. *First United Presbyterian Church* (1968), 143 Ind. App. 72, 238 N. E. 2d 479, 240 N. E. 2d 77, which the majority in the case at bar finds it necessary to say: "To the extent that the *Presbytery of Indianapolis* case imposed an implied trust and based such imposition upon principles of ecclesiastical law and church doctrine, the same cannot stand in view of the decisions in the *Mary Elizabeth Blue Hull* case".[11] This then leads the majority to

---

of Union Chappel of Hancock County' and it was never by them deeded to anyone and they must be held to be the owner."

What was thus decided in *Doughty* was never an issue in the case at bar. Title in the plaintiff-trustees was conceded from the beginning.

11. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658. Quotation from majority opinion, ante p. 304.

the implied conclusion that appellants never could have won this case, no matter what their evidence, because their "position . . . cannot be sustained without reference to ecclesiastical law, church discipline or church doctrine." The majority apparently believe that *Hull* holds it to be a violation of the First Amendment to the Constitution of the United States to refer to ecclesiastical or church law or polity to decide church *property* disputes. I cannot agree.

In my opinion appellants' position and our opinion in *Presbytery of Indianapolis* are consistent with *Maryland and Virginia Eldership of the Churches of God* v. *The Church of God at Sharpsburg* (1970), 396 U. S. 367, 90 S. Ct. 499, a Per Curiam decision which is the latest pronouncement of the United States Supreme Court, saying:

> "In resolving a church property dispute . . . the Maryland Court of Appeals relied upon . . . and upon provisions in the constitution of the General Eldership pertinent to the ownership and control of church property. 254 Md. 162, 254 A. 2d 162 (1969),. . . . Since . . . the . . . resolution of the dispute involved no inquiry into religious doctrine . . . the appeal is dismissed for want of a substantial federal question."

Appellants' position in this case involves no inquiry into religious doctrine, but only into the rules of the denomination; the equivalent of "provisions in the Constitution of the General Eldership". The same is true of the *Presbytery of Indianapolis* case which the majority holds unconstitutional. But my constitutional opinions and the majority's constitutional opinions are irrelevant for two reasons: No constitutional question has been presented by the parties and if one had, we could not decide it. Under Burns IND. STAT. ANN. §§ 4-214 and 4-217, we would be required to transfer the appeal to the Supreme Court of Indiana.

The factual differences between *Presbytery of Indianapolis* and the case at bar, which the majority opinion points out, are not sufficient to distinguish the two cases on principle.

That case should be followed or this appeal should be transferred to the Supreme Court. We have no jurisdiction to refuse to follow it on constitutional grounds. Burns § 4-214.

I do agree with the majority that what they call the "formal title" approach (and which the note in 54 Iowa L. Rev. 899, 907 calls "the 'formal title' doctrine") has many advantages including avoidance of First Amendment questions. But the majority opinion does not make clear to me what the majority understands that doctrine to be. Nor have they told me how it applies to the case at bar or to any case except those in which the legal and equitable titles are stated of record. Where, as here, the record title expresses only the legal title and clearly implies a trust without stating its terms and it is the terms of that implied trust which are in dispute, I fail to see how a " 'formal title' approach" could possibly resolve that dispute.

The majority says "the result . . . sought by the appellees can be justified on *neutral principles of property law* without reference to ecclesiastical law, church discipline or church doctrine." But what those "neutral principles" are is never stated. Concerning the result, however, "arbitrary" would be more truly descriptive than "neutral". For if I understand what the majority holds today it is that when real estate is conveyed to Trustees of a church without any words declaring the terms of the trust, it will arbitrarily be held that the trust is free of any rules of the denomination of which the local church may be a part. This arbitrarily makes congregational churches out of all churches whose property is thus titled. Those denominations whose polity is episcopal, connectional, hierachical, presbyterial or something else other than congregational can hardly be expected to see this as a *neutral* rule of law.

If my understanding of this dispute (including the trial evidence and the rules of the denomination) is correct, the judgment should be reversed and the cause remanded with

directions to the trial judge to find all the facts pertinent to the resolution of that dispute, to restate his conclusions of law consistent with the views expressed in *Presbytery of Indianapolis* v. *First United Presbyterian Church* (1968), 143 Ind. App. 72, 238 N. E. 2d 479, 240 N. E. 2d 77, and *Ind. Annual Conference* v. *Lemon* (1956), 235 Ind. 163, 131 N. E. 2d 780 (majority opinion only) and to render judgment accordingly. On the other hand, if the majority view is correct, this appeal should be transferred to the Supreme Court. If that court sees in this case the same constitutional question which the majority opinion purports to decide, then that court should accept transfer and settle that issue. If it sees no constitutional question, the case should be remanded to us for decision of the nonconstitutional issues presented to us by the parties.

NOTE.—Reported in 259 N. E. 2d 883.