**HINKLE CREEK FRIENDS CHURCH, a/k/a Hinkle Creek Monthly Meeting of Friends, Defendants-Appellants,**

v.

**WESTERN YEARLY MEETING OF FRIENDS CHURCH, Hinkle Creek Preparative Meeting, Plaintiffs-Appellees.**

No. 1–1083A332.

Court of Appeals of Indiana,
First District.

Oct. 11, 1984.

Rehearing Denied Nov. 15, 1984.

Frank E. Spencer, Indianapolis, for defendants-appellants.

John D. Proffitt, Deborah L. Farmer, Campbell, Kyle & Proffitt, Noblesville, for plaintiffs-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-Appellant Hinkle Creek Friends Church (Hinkle Creek) appeals the trial court's order vesting the title, control, and possession of all real estate, tangible personal property, cash, bank accounts, and all other financial assets of Hinkle Creek in Plaintiff-Appellee Western Yearly Meeting of Friends Church (Western Yearly Meeting).

We affirm.

## STATEMENT OF THE FACTS

It is necessary to preface our recitation of the facts by explaining the hierarchical nature of the Society of Friends, or Quaker, religion. A century-old decision of the Indiana Supreme Court, *White Lick Quarterly Meeting of Friends v. White Lick Quarterly Meeting of Friends,* (1883) 89 Ind. 136, ably explains the Quaker organization and remains accurate today:

"The Society of Friends has a regular organization, consisting of a series of religious bodies, holding certain relations to each other, and known as Meetings. The first, or lowest of these 'Meetings' is the Preparative, organized primarily as meetings for worship and corresponding in general terms to what are known as congregations in other religious demoninations. The next in grade is the Monthly Meeting, made up of delegates from Preparative Meetings. The third is the Quarterly [now Area] Meeting, composed of delegates or representatives from certain Monthly Meetings. The fourth and highest in authority is the Yearly Meeting, consisting of representatives from all the Quarterly [Area] Meetings within certain territorial limits. Each subordinate Meeting is required to report to its immediate superior at stated times. Besides the delegates and representatives, the members of the society generally are entitled to attend all the Meetings and to participate to a greater or less extent in their proceedings. The greater part of the merely disciplinary and administrative business of the society is transacted at the Monthly Meetings, but their proceedings may be reviewed by the Quarterly [Area] Meetings and appeals may be still further taken to the Yearly Meetings. Each Yearly Meeting has a final and controlling jurisdiction in all matters of faith, religious duty, administration and discipline within its territorial limits,

and is regarded as a coordinate supreme judicatory with other Yearly Meetings, all constituting the ecclesiastical system known as the Society of Friends."

*White Lick Quarterly, supra,* at 141.

The Western Yearly Meeting meets annually in August. Between meetings of the Western Yearly Meeting, its Administrative Council has all of the authority of the Yearly Meeting. The Executive Committee is appointed to serve as a coordinating agency for the different boards formed within the Yearly Meeting. It handles matters which arise and must be dealt with between Yearly Meetings and Administrative Council meetings and has such other powers as may be granted to it by the Yearly Meeting or Administrative Council.

The doctrine, belief, and discipline of the Western Yearly Meeting of Friends is contained in *Faith and Practice,* which offers doctrinal and behavioral guidelines for members of the Friends Church.

Prior to November 1981, certain problems developed within Hinkle Creek. The Western Yearly Meeting Executive Committee met on November 5, 1981, discussed the problems, and decided to appoint observers to attend the November Monthly Meeting at Hinkle Creek. A few weeks later, the Administrative Council met and authorized the Executive Committee to act on behalf of the Western Yearly Meeting with respect to any action to be taken in regard to Hinkle Creek.

The problems at Hinkle Creek stemmed from actions which are contrary to the tenets of *Faith and Practice,* such as practicing communion with the physical elements and sending ballots to its members suggesting the withdrawal of Hinkle Creek from the Western Yearly Meeting. Further, at the December Hinkle Creek Monthly Meeting, the clerk committed acts contrary to Quaker Meeting practice. Several church members objected, left the Meeting, and were promptly disciplined by the remaining members by removing them from their committee offices and prohibiting them from holding any offices for three years. The disciplined members petitioned

the Western Yearly Meeting to intervene; the Executive Committee met on March 13, 1982 and determined Hinkle Creek would be reduced to a Preparative Meeting under the care of the Executive Committee. The Committee decreed in part that Hinkle Creek Preparative Meeting conduct worship and business meetings in the traditional manner of Friends of the Western Yearly Meeting. The Committee prepared guidelines for Hinkle Creek's new status as a Preparative Meeting; one guideline stated that "the title to all real estate, tangible personal property, and all financial assets heretofore under the title or control of Hinkle Creek Monthly Meeting of Friends is hereby vested in Western Yearly Meeting".

In 1841, real estate was deeded to the Westfield Monthly Meeting of Friends. The deed granted property to the trustees appointed by the Westfield Monthly Meeting or its successor Monthly Meeting (in this instance, Hinkle Creek), or

"... if circumstances should require by inability or otherwise of said Monthly Meeting of Westfield or any other Monthly Meeting to which it may belong that any of the superior meetings of the ancient and established society of Friends according to the order and usage of said society may shall have lawful authority to appoint successors to the aforesaid trustees or their successors for the effectual holding permanent right to property and to the said Society of Friends forever."

Title to this parcel of land forms the subject matter of this action. Western Yearly brought the action for declaratory relief in May 1982, asking the trial court to find that the title to all real estate, tangible personal property and all financial assets of Hinkle Creek Monthly Meeting belong to Western Yearly. The trial judge, in his order, vested title to the property and assets in Western Yearly. The order also stated:

"[a]ll other portions of the order of the Executive Committee as set forth in their report of March 13, 1982 and as confirmed by the Administrative Council are

hereby confirmed by this court and made a part of this order and the parties are directed to comply with said provisions forthwith."

## ISSUES

Hinkle Creek raises the following issues which we have condensed and restated:

I. Whether the trial court erred in exercising subject matter jurisdiction over this cause;

II. Whether Western Yearly Meeting has the authority and legal right to:
A. reduce Hinkle Creek's status to that of a Preparative Meeting,
B. take title to Hinkle Creek's real and personal property.

III. Whether the trial court erred when it did not apply IND.CODE 23–10–2–1 *et seq.* to the instant case so as to allow Hinkle Creek to retake title to the property.

## DISCUSSION AND DECISION

### I. *Subject Matter Jurisdiction.*

 There is extensive case law discussing the resolution by a civil court of church property disputes. *See, e.g., Presbyterian Church v. Hull Church,* (1969) 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658; *Watson v. Jones,* (1872) 13 Wall. (80 U.S.) 679, 20 L.Ed. 666; *Grutka v. Clifford,* (1983) Ind.App., 445 N.E.2d 1015; *Marich v. Kragulac,* (1981) Ind.App., 415 N.E.2d 91; *United Methodist Church v. St. Louis Crossing Independent Methodist Church,* (1971) 150 Ind.App., 574, 276 N.E.2d 916; *Price v. Merryman,* (1970) 147 Ind.App. 295, 259 N.E.2d 883, *cert. denied,* 404 U.S. 852, 92 S.Ct. 89, 30 L.Ed.2d 92 (1971). All of the decisions commence by citing the well-settled point of law that the state has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution. *Marich, supra,* at 96. This statement is tempered, however, by the warning that special problems arise when the disputes implicate controversies over church practices. *Presbyterian Church, supra,* 393 U.S. at 445, 89

S.Ct. at 604. The First Amendment prohibits a court from adjudicating matters of purely ecclesiastical concern. *Id.* at 449, 89 S.Ct. at 606. Nevertheless, "it is also true that the source of the controversy, i.e., whether the property dispute is motivated by a controversy over doctrinal practices, is not determinative of whether the civil courts can intervene to decide church property disputes. To so hold would too narrowly restrict the scope of the court's jurisdiction". *Marich, supra,* at 96, citing *Merryman, supra.* Thus, the relevant inquiry is whether the court can resolve the property dispute on the basis of neutral principles of law which do not involve the resolution by the court of ecclesiastical issues. *Id.* The Neutral Principles of Law approach was discussed in *Grutka, supra:*

> "The policy of the Neutral Principles of Law Approach is to allow secular courts to resolve church property disputes without violating the first amendment's prohibition of interpreting religious documents. The Neutral Principles of Law Approach requires courts to examine certain documents for language of a trust in favor of the General Church. The documents to be examined include civil statutes, the express language of deeds, local church charters, and general church constitutions."

*Id.* at 1019 (all citations omitted).

The civil court must take care to assure that the interpretation of the particular documents does not require its reliance on religious precepts in order to determine whether a trust was created. *Jones v. Wolf,* (1979) 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775.

 Here, the trial court simply examined the language of the original deed to the real property in dispute. The deed, page 42, *supra,* states in part that "any of the superior meetings of the ancient or established Society of Friends ... may shall have lawful authority to appoint successors ... for the effectual holding permanent right to property and to the said Society of Friends forever". The deed

clearly allows the superior meeting, the Western Yearly Meeting, to take the action it did. Further, under the Neutral Principles of Law approach, the trial judge examined *Faith and Practice* in order to resolve the church property dispute; a section of the doctrine provides that when a meeting is discontinued, "the physical property and investments belonging to said meeting shall be vested in the Yearly Meeting, except when otherwise determined by deed or other legal restriction". There is no provision in *Faith and Practice* for a Preparative Meeting to own property. We do not believe the trial court delved "into an ecclesiastical thicket", *Marich, supra,* at 981, in order to resolve the property dispute herein; rather, it correctly applied the Neutral Principles of Law approach and determined that the property in question was held in implied trust for Western Yearly.

■ A corollary to the First Amendment prohibition against a civil court's resolution of property disputes on the basis of religious doctrine is the polity approach, a view which attaches significance to the internal structure of the congregation and the parent church. *Id.* The First Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. *Jones, supra,* at 727.

"The polity approach is not, however, one of mechanical simplicity. Rather it entails three stages of analysis. In the first step it must be determined whether the denomination is, in general, hierarchical or congregational. If the denomination is found to be hierarchical, the inquiry turns to whether the local congregation is in fact subject to the direction of the hierarchy. Should an affirmative determination be made in this regard, the court must then ascertain the legitimate source of authority in the hierarchy and enforce its decisions."

*Marich, supra,* at 98.

Quite obviously, the Society of Friends is a hierarchical organization. *See* page 41 of this opinion, *supra*. *Faith and Practice* states that "[a] Yearly Meeting consists of the members of the Monthly Meetings subordinate to it". A provision concerning the jurisdiction of the Yearly Meeting in *Faith and Practice* states:

"The Yearly Meeting has power to decide all questions of administration, to counsel, admonish, *or discipline its subordinate meetings,* to measure and to provide means for promotion of truth and righteousness, and to inaugurate and carry on departments of religious and philanthropic work."

(Our emphasis).

It is clear Hinkle Creek Monthly Meeting was subject to the direction of Western Yearly Meeting.

Neither theory, the Neutral Principles of Law approach or the polity analysis, requires interpretation of ecclesiastical matters in the case at bar, therefore, the trial court correctly resolved this church property dispute.

One further point deserves mention. Hinkle Creek argues that the trial judge, in incorporating all other portions of the order of the Executive Committee into his order, impermissibly resolved questions of doctrinal propriety. The Executive Committee's report detailed the insubordinate acts of Hinkle Creek as well as included guidelines for Hinkle Creek's conduct as a Preparative Meeting.

■ Our review of the court's order indicates that the trial judge did not improperly resolve any ecclesiastic matter by simply adopting Western Yearly's report and incorporating it into the order. The mere adoption of the report is not tantamount to an independent assessment of the contents within. The trial court accepted Western Yearly's authority to discipline its subordinate meetings pursuant to *Faith and Practice.*

II. *Scope of Western Yearly Authority.*

■ Hinkle Creek asserts that the Western Yearly Meeting does not have the authority to reduce it to Preparative Meeting status, inasmuch as the *Faith and Practice* provision relied upon in part by West-

ern Yearly to justify its action refers to "discontinued meetings", not reduced meetings. This provision, discussed above, states in full:

"When a Meeting is discontinued, the physical property and investments belonging to said Meeting shall be vested in the Yearly Meeting, except when otherwise determined by deed or other legal restriction. Such property is to be held for some specific purpose, or used for the advancement of the general work of the Yearly Meeting as that body may determine. All funds held from such discontinued Meetings shall be administered insofar as possible in accordance with the directions of the original donor. A Meeting is not to be considered as discontinued if it unites as an organized group with another Friends Meeting."

Hinkle Creek argues that the wording of the above section makes it clear that the provision only applies to voluntary discontinuations, such as when a Monthly Meeting disbands totally. It asserts that the section neither provides for a reduction in status nor permits the property and investments of Hinkle Creek to be vested in Western Yearly because this is not a voluntary discontinuation.

We disagree with the narrow interpretation that the provision only applies to a voluntary disbanding. The Yearly Meeting has the power to "decide all questions of administration, to counsel, admonish, or discipline its subordinate meetings" according to *Faith and Practice*. In this instance, the discipline took the form of a reduction to Preparative Meeting status until such time as Hinkle Creek can demonstrate to the Yearly Meeting that it has returned to stability and has made recognizable progress in solving its problems in good faith. A Preparative Meeting is a local congregation without any ecclesiastical authority (R. 112), and there is no provision in *Faith and Practice* for a Preparative Meeting to hold and administer real estate and other property. The Monthly Meeting, then, *was* discontinued, and since Preparative Meetings can't hold real estate,

the property is accordingly vested in the Yearly Meeting.

Further, Western Yearly presented the expert testimony of Dr. Allen Kolp, Dean of the Earlham College School of Religion. Dr. Kolp explained in great detail the hierarchical structure of the Friends Church and testified as to the authority of each meeting "level":

"Q. Does the [discontinued meeting] section of *Faith and Practice* give the Yearly Meeting and the Administrative Council the power to reduce a Monthly Meeting to a Preparative Meeting?

[Objections]

A. In my opinion, it does—the yearly meeting does have that right."

(R. 141, 143)

Other witnesses reiterated Dr. Kolp's opinion.

We find no error here.

III. *Ind. Code 23–10–2–1 et seq.*

IND.CODE 23–10–2–1 *et seq.* concerns land acquisition and construction of buildings for benevolent purposes; Hinkle Creek's argument centers on two specific provisions of the section, namely IND. CODE 23–10–2–6, regarding succession of trustees, and IND.CODE 23–10–2–14, regarding the revival of a dissolved corporation.

█ IND.CODE 23–10–2–6 states that trustees of a society may be removed from their position by majority vote at a meeting of one-third of the members of the society. Hinkle Creek's entire argument regarding this provision is that "there is no evidence that any such removal of the trustees of the defendant Monthly Meeting had taken place". We note that the present action is not the removal of trustees but rather the discontinuance of Hinkle Creek Monthly Meeting, its reduction in status to a Preparative Meeting, and the vesting of Hinkle Creek's physical property and investments in Western Yearly. We have already determined that Western Yearly had the au-

thority to take this action pursuant to the provisions of *Faith and Practice* as well as the deed to the real estate which is the subject of this dispute. Consequently, IND.CODE 23–10–2–6 is simply inapplicable to the present situation.

■ IND.CODE 23–10–2–14 is actually the focus of Hinkle Creek's argument:

"When any society within the meaning of this act shall have been dissolved from any cause, a majority of the persons interested therein may revive the same, within five (5) years after such dissolution, by electing a new board of trustees, and making record of such election in the recorder's office of the proper county, as hereinbefore provided. And whenever, from any cause, any church or religious society, holding and possessing property within the meaning of this act, shall have been dissolved, the annual or quarterly conference, or other ecclesiastical body to which such church or religious society is directly subordinate, shall have power to appoint trustees, in accordance with the customs and usages of said church, to take the charge and control of the property of said church or society until it shall be revived as contemplated by this act."

Hinkle Creek asserts that the above statute contemplates that the Yearly Meeting exercises temporary control over Hinkle Creek's real property and investments until the Monthly Meeting elects a new board of trustees. Thus, there is no transfer of title to Western Yearly. Further, Hinkle Creek refers us to the "Discontinued Meeting" section of *Faith and Practice* (*see* page 45, *supra*) which states in part that the physical property of a Discontinued Meeting is vested in the Yearly Meeting "except when otherwise determined by deed or other legal restriction". Hinkle Creek terms IND.CODE 23–10–2–14 that "legal restriction".

Western Yearly, on the other hand, argues that the statute's purpose is to provide for clarity of title in the event that the local church is discontinued and its trustees no longer actively function as titleholders

of the property. Appellee's brief, pg. 32. Western Yearly points out that the statute states that the superior ecclesiastical body, "in accordance with the custom and usages" of the church, has the power to take charge and control of the property of the dissolved subordinate body. Again, it is clear that the "custom and usages" of the Friends Church, as codified in *Faith and Practice*, provide the Yearly Meeting with the authority to take title to Hinkle Creek property. There is no dispute whatsoever as to the clarity of title in the instant case.

The trial court did not err in refusing to apply IND.CODE 23–10–2–1 *et seq.* to this situation.

In all respects, the trial court judgment is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.