The PRESBYTERY OF OHIO VALLEY, INC. d/b/a the Presbytery of Ohio Valley d/b/a Ohio Valley Presbystery, and the Synod of Lincoln Trails of the Presbyterian Church (U.S.A.), Inc. d/b/a the Synod of Lincoln Trails, Inc., Appellants–Plaintiffs,

v.

OPC, INC. f/k/a Olivet Presbyterian Church, Inc. d/b/a Olivet Presbyterian Church d/b/a Olivet Evangelical Presbyterian Church d/b/a Olivet Presbyterian Church of Evansville, Olivet Evangelical Presbyterian Church of Evansville, Inc. d/b/a Olivet Evangelical Presbyterian Church, and the Evangelical Presbyterian Church d/b/a Evangelical Presbyterian Church of America, Appellees–Defendants.

No. 82A02–1003–MF–339.

Court of Appeals of Indiana.

Dec. 14, 2010.

Judy L. Woods, Bose McKinney & Evans LLP, Indianapolis, IN, Ross E. Ru-

dolph, Rudolph Fine Porter & Johnson LLP, Evansville, IN, Attorneys for Appellants.

Brian P. Williams, Kahn, Dees, Donovan & Kahn, LLP, Evansville, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

In this appeal, a local congregation that was a part of the national Presbyterian Church petitioned to leave the national Church. When the governing Church body indicated that it might not permit the local congregation to retain the property on which it was situated, the local congregation truncated the process and refused to acknowledge the Church's right to the property. The dispute made its way into the judicial system, and we now conclude that because (1) the local congregation was part of the national Church and accepted the benefits of being part of a national organization, (2) the local congregation acknowledged in its bylaws that it was bound by the national Church Constitution and could not amend its bylaws to conflict with that document, and (3) the Church Constitution contains a clause providing that all property titled to local congregations is held in trust for the use and benefit of the national Church, judgment must be entered in favor of the governing judicatory bodies of the national Church—the Appellants.

Appellants-plaintiffs Presbytery of Ohio Valley, Inc. d/b/a Presbytery of Ohio Valley d/b/a Ohio Valley Presbytery ("Presbytery"), and Synod of Lincoln Trails of the Presbyterian Church (U.S.A.), Inc. d/b/a Synod of Lincoln Trails, Inc. ("Synod") (collectively, "the Appellants") appeal the

trial court's order granting summary judgment in favor of appellees-defendants OPC, Inc. f/k/a Olivet Presbyterian Church, Inc. d/b/a Olivet Presbyterian Church d/b/a Olivet Evangelical Presbyterian Church d/b/a Olivet Presbyterian Church of Evansville, Olivet Evangelical Presbyterian Church of Evansville, Inc. d/b/a Olivet Evangelical Presbyterian Church (collectively, "Olivet"), and Evangelical Presbyterian Church d/b/a Evangelical Presbyterian Church of America ("EPC") (collectively, the Appellees).

The Appellants argue that the trial court erred by applying the neutral principles of law approach rather than the polity approach to this property dispute. But even if the neutral principle approach is found to apply herein, the Appellants contend that they should prevail. We conclude that when the neutral principles of law approach is applied correctly, the Appellants prevail. Consequently, we reverse and remand with instructions to enter summary judgment in the Appellants' favor, together with a declaratory judgment that Olivet has no right, title, or interest in the Oak Hill Property, and a constructive trust on that property in favor of the Presbytery.

### FACTS [1]

#### Structure and History of the Presbyterian Church

The General Assembly of the Presbyterian Church in the United States of America was formed in 1788, and when divisions around slavery and related religious doctrines could not be reconciled, the Church split in 1865. Churches south of the Mason–Dixon Line became known as the Presbyterian Church in the United States

---

1. We held oral argument in this case on November 30, 2010, and we thank the parties for their presentations.

("PCUS"), and congregations north of the Mason–Dixon line adopted the name "The United Presbyterian Church in the United States of America" ("UPCUSA"). The split continued until June 10, 1983, when these two branches of the Church reunited, and thereafter the denomination was known as the Presbyterian Church (U.S.A.) ("PC(USA)").

Doctrinal disputes among American Presbyterians in the 18th and 19th centuries led to the formation of several splinter groups, including the EPC, which is an independent denomination. The PC(USA) and EPC have different standards for ordination and holding church property, as well as doctrinal differences.

The PC(USA) is governed by its Constitution, which is comprised of the Book of Confessions and the Book of Order. The Book of Order contains the Form of Government, Directory for Worship, and Rules of Discipline.

There are four levels of governance in the PC(USA): the General Assembly (highest), the synod (multistate regional), the presbytery (primary regional), and the session (local church). The Constitution provides that each lower governing body is answerable to the successive higher governing body. The presbytery is the primary governing body within the PC(USA), has plenary power, and is responsible for the mission and governance of the PC(USA) within its geographic area.

Among other things, the Constitution provides that all property held by individual congregations is held in trust for the PC(USA):

> All property held by or for a particular church, a presbytery, a synod, the General Assembly, or the [PC(USA)], whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the [PC(USA)].

Stip. Ex. 2. This clause (the "Property Trust Clause") has been included in the Constitution since the formation of the PC(USA) in 1983.

### The Parties to the Appeal

The Presbytery, which was incorporated in 1973, is responsible for the mission and governance of the PC(USA) in the southwestern third of Indiana, including all of Vanderburgh County. Consequently, Olivet is within the bounds of the Presbytery. The Synod, also incorporated in 1973, is the intermediate governing body responsible for all of the presbyteries in Indiana and Illinois.

Olivet was founded near the turn of the twentieth century and, beginning in at least 1906, was a member congregation of the UPCUSA. In 1968, the Olivet congregation decided to change locations, and purchased property, located on Oak Hill Road in Evansville (the Oak Hill Property). The funds for the purchase of the Oak Hill Property were derived from donations, borrowed money, and proceeds from the sale of other church property. The warranty deed stated that the property was conveyed to "Olivet Presbyterian Church of Evansville, Indiana." Stip. Ex. 36. Olivet has been located on the Oak Hill Property since that time.

When it acquired the Oak Hill Property in 1968, Olivet's governance documents recognized that it was part of the UPCUSA and subject to the UPCUSA Constitution. Olivet further expressly recognized that it was subject to and governed by the Constitution in its 1969, 1971, and 1978 bylaws. In 1983, when the northern and

southern branches of the Church reunited, Olivet became a member church of the PC(USA).

On November 29, 1994, Olivet incorporated as an Indiana not-for-profit corporation as "Olivet Presbyterian Church, Inc." In 1998, and again in 2000, Olivet amended its bylaws. In both instances, the amended bylaws provided that Olivet "recognizes the constitution of [PC(USA)] as the authority for the governance of the church and its congregation." Stip. Ex. 42. The bylaws further provided that they "s hall not be amended so as to conflict with the Constitution of [PC(USA)]." *Id.*

**Olivet Petitions to Leave PC(USA)**

On July 30, 2006, Olivet petitioned the Presbytery, pursuant to the procedure set forth in the PC(USA) Constitution, as follows: "The congregation of [Olivet] respectfully asks permission of the Presbytery ... to be released. from the [PC(USA)], with property and finances, to the [EPC]." Stip. Ex. 51. The Constitution provides that after receiving the petition, the Presbytery would determine the future of Olivet's property, including the Oak Hill Property:

> Whenever property of, or held for, a particular church of the [PC(USA)] ceases to be used by that church as a particular church of the [PC(USA)] in accordance with this Constitution, such property shall be held, used, applied, transferred, or sold as provided by the presbytery.

Stip. Ex. 2.

The Olivet petition was presented and discussed at the August 26, 2006, Presbytery meeting. No vote took place at this meeting because the EPC had not yet confirmed that it would accept Olivet if it

were transferred. Because all necessary steps for transferring Olivet could not be completed by the December Presbytery meeting, the Presbytery Task Force proposed that the Olivet congregation and its pastor be dismissed to the EPC, but that property issues be resolved temporarily by entering into a lease for a consideration of $1 through August 1, 2007. Thus, on December 7, 2006, the Presbytery agreed to release Olivet from membership in PC(USA) to EPC, effective immediately, without property, but anticipating further negotiations for a property transfer and subject to certain conditions. The EPC received Olivet on December 8, 2006.

In February 2007, Olivet formed a new corporation, named "Olivet Evangelical Presbyterian Church of Evansville, Inc.," which acquired the then-existing corporation, OPC, Inc.[2] On April 23, 2007, Olivet's Clerk of Session sent an email to the Presbytery, informing it that Olivet had adopted the following session recommendation:

> We are thankful for the partnership we have had in the past with the Presbytery ... and we are looking forward to continuing our ministry for Christ in the Evansville area. Based on our conviction that God has given Olivet Evangelical Presbyterian Church the stewardship of [the Oak Hill Property], we respectfully decline to sign the lease proposed by the Presbytery. ...

Stip. Ex. 68. On May 25, 2007, Olivet's Clerk of Session sent another email to the Presbytery, explaining that Olivet did not intend to continue any negotiations regarding disposition of the Oak Hill Property.

**The Litigation**

On July 2, 2007, the Appellants filed a complaint against the Appellees, seeking,

---

**2.** Olivet had reincorporated on November 6, 2006, anticipating its split with PC(USA), re-

naming itself OPC, Inc.

among other things, a declaratory judgment that Olivet has no right, title, or interest in the Oak Hill Property and a constructive trust on that property in favor of the Presbytery. On October 19, 2009, the Appellants filed a motion for partial summary judgment, seeking a declaration that the Presbytery is entitled to the Oak Hill Property and seeking damages incurred as a result of Olivet's breach of the agreement that led to the dismissal of Olivet to the EPC and permitted Olivet to remain temporarily in possession of the property. The same day, the Appellees filed a cross-motion for summary judgment.

The relevant facts are undisputed, and the parties agreed to submit the case to the trial court on the basis of a stipulated record. In addition to the stipulated record, Olivet submitted several affidavits and documents to which the Appellants objected and moved to strike. The trial court took the objections and motion to strike under advisement but never expressly ruled on them.

Following a December 8, 2009, hearing on the cross-motions for summary judgment, the trial court entered final judgment in favor of the Appellees on March 9, 2010. In making its final ruling, the trial court considered and relied on the affidavits and documents that the Appellants had objected to and moved to strike. Among other things, the trial court found and held as follows:

7. ... [T]his Court will find that Indiana law falls in line with a majority of the jurisdictions in the United States and will apply the Neutral Principles Approach as set forth by the United States. In applying the neutral principles, the Court looks to the deed, documents of ownership, corporate documents

of the parties and provisions of the Constitution of the PC(USA)....

＊　　＊　　＊

14. Following the Neutral Principles Analysis, the title to real estate is demonstrated through the deed ... [, which] clearly provided that the real property belongs to Olivet.

＊　　＊　　＊

17. ... [N]owhere in [Olivet's] Articles of Incorporation or in the By-laws was any statement made that the [Oak Hill Property] was being placed in trust for the benefit of any of the Plaintiffs and/or the PC(USA). Further, nowhere in the Articles of Incorporation or By-laws was it stated that membership was irrevocable....

＊　　＊　　＊

21. ... Olivet agreed to abide by the governance of the church so long as they were a member, but church governance permits their departure and all agree they have departed and are following a new Presbyterian Church governance. As Olivet has indicated, they had a voluntary right to put it in and have the same voluntary right to take it out regarding when they follow or recognize church governance.

＊　　＊　　＊

25. ... No written and signed express trust has been presented by either party and thus the Court concludes one must not exist....

＊　　＊　　＊

*Conclusions of Law*

＊　　＊　　＊

2. ... While there is evidence that Indiana Courts have utilized both the "neutral principles approach" and the "polity approach" in deter-

mining ownership of church property, this Court is applying the neutral principles approach.... The majority view throughout the United States appears to follow the neutral principles approach....

\* \* \*

11. Indiana real estate law governs whether title to real estate has been transferred. If the real estate property owned by [Olivet] is to be placed in trust, it ought to be done through real estate transfer by the property owners....

12. ... [T]he Court can only conclude from the facts presented by the parties that Olivet prevails when applying the "neutral principles" approach. The evidence shows that the deed and documents of ownership specifically provide that the real and personal property at issue in this case are held solely by the Olivet congregation rather than by the Plaintiffs or the PC(USA).

\* \* \*

19. Both parties cite various portions of the PC(USA) Book of Order in support of their respective positions.... [T]he Court concludes that wading into various portions of the Book of Order which may or may not be conflicting requires this Court to determine ecclesiastical questions in the process of resolving property disputes [,] which is prohibited by the First Amendment to the United States Constitution....

\* \* \*

21. Insufficient evidence has been presented to establish in this case the existence of either an express trust or an implied trust of any sort.... Likewise, there has been insuffi-cient evidence to establish a constructive trust since a constructive trust is not actually a trust but a common law remedy created by equity....

Appellants' App. p. 12–40. The Appellants now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.* An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908.

### II. The Neutral Principles of Law Approach

The parties disagree as to which analytical framework should be used to resolve this dispute. The Appellants contend that the trial court erred by applying the neutral principles of law approach, arguing instead that the polity approach should have been applied. In either case, however, the Appellants argue that the trial court erred by ruling in the Appellees' favor.

■ As a general matter, a civil court may resolve a property dispute between a

local church and the greater denominational church without violating the First Amendment to the United States Constitution or Article I of the Indiana Constitution. *Hinkle Creek Friends Church v. W. Yearly Meeting of Friends Church,* 469 N.E.2d 40, 43 (Ind.Ct.App.1984) (citing *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969)). The United States Supreme Court has recognized two acceptable approaches to resolving church property disputes: the polity approach (and its subpart applicable to hierarchical church bodies, the hierarchical deference rule) and the neutral principles of law approach. *Draskovich v. Pasalich,* 151 Ind.App. 397, 280 N.E.2d 69, 76–78 (1972) (analyzing *Hull* ).

Although the Appellants prefer the application of the polity approach, they acknowledge that the neutral principles of law approach is also acceptable, if not preferred. We agree, and decline the Appellants' invitation to apply the polity approach. Instead, we will proceed, as did the trial court, with the neutral principles of law approach.

 The neutral principles of law approach, in essence, requires courts to apply

> neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded.... [T]he [First] Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.

*Hull,* 393 U.S. at 449, 89 S.Ct. 601. This court has also had occasion to explore the neutral principles of law approach, explaining first that the impact of *Hull* was

to render impotent the implied trust theory in so far as such theory is based upon principles of ecclesiastical law, church doctrine, or church discipline. It is clear that the civil courts cannot rely upon ecclesiastical law of the church to impose an implied trust upon real estate.

*Merryman v. Price,* 147 Ind.App. 295, 311, 259 N.E.2d 883, 893 (1970).

Following *Hull,* the United States Supreme Court further explored the neutral principles approach in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). The Supreme Court cited the approach with favor in general, but noted certain difficulties as well:

> The primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges....

> That is not to say that the application of the neutral-principles approach is wholly free of difficulty. *The neutral-principles method ... requires a civil court to examine certain religious documents, such as a church constitution, for language of trust in favor of the general church. In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms....*

> On balance, however, the promise of nontanglement and neutrality inherent in the neutral-principles approach more than compensates for what will be occasional problems in application.... We therefore hold that a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute.

*Id.* at 603–04, 99 S.Ct. 3020 (emphasis added).

In this case, the trial court focused nearly exclusively on the language of the deed to the Oak Hill Property. Although the deed language is certainly a relevant consideration, that is not the end of our inquiry. This court has explained that the neutral principles of law approach " 'requires courts to examine certain documents for language of a trust in favor of the General Church. The documents to be examined include civil statutes, the express language of deeds, local church charters, and general church constitutions.' " *Hinkle,* 469 N.E.2d at 43 (quoting *Grutka v. Clifford,* 445 N.E.2d 1015, 1019 (Ind.Ct.App.1983)).

In *Merryman,* this court implied that a trial court may not examine church documents in applying the neutral principles approach, stating that the only relevant inquiry is the language to be found in the deed itself. 147 Ind.App. at 312–13, 259 N.E.2d at 893. This so-called formal title approach, however, has not been the law of Indiana since the United States Supreme Court issued *Jones* in 1979. The *Jones* Court held that, in fact, trial courts are *required* to examine church constitutions and similar documents for trust language. 443 U.S. at 603–04, 99 S.Ct. 3020. And this court later clarified, following *Merryman,* that so long as the analysis does not require ecclesiastical inquiries, examination of church charters and constitutions is appropriate under the neutral principles approach. *United Methodist Church v. St. Louis Crossing Independent Methodist Church,* 150 Ind.App. 574, 584–85, 276 N.E.2d 916, 922 (1971).

Inasmuch as courts are required to go beyond the language of the deed itself to resolve a church property dispute—assuming, of course, that ecclesiastical inquiries are not required—we turn to the language of the Property Trust Clause herein:

All property held by or for a particular church, a presbytery, a synod, the General Assembly, or the [PC(USA)], whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the [PC(USA)].

Stip. Ex. 2. The language of this clause is plain and unambiguous—notwithstanding the language of the deed, all property held by entities of the PC(USA) is held in trust for the use and benefit of the PC(USA). It is undisputed that Olivet was a member congregation of the PC(USA). It is also undisputed that the Property Trust Clause has been included in the PC(USA) Constitution since 1983.

Olivet emphasizes that when it purchased the property in 1968, neither the PC(USA), its Constitution, nor the Property Trust Clause existed. While that is certainly true, when the two branches of the Presbyterian Church came back together in 1983 to form the PC(USA), Olivet was included in the newly formed Church. And in 1998 and 2000, Olivet amended its bylaws, acknowledging that it was bound by the PC(USA) Constitution—which included the Property Trust Clause—and further acknowledging that it could not amend its bylaws to conflict with the Constitution. In other words, although Olivet did not re-title the Oak Hill Property such that it was explicitly held in trust for the PC(USA), it acknowledged, by virtue of its amended bylaws, that it was bound by the Property Trust Clause.

Notwithstanding this clear and unambiguous history, Olivet contends that its bylaws were not irrevocable and that when it reincorporated in 2006 to become part of

the EPC, it properly removed itself from the governance of the PC(USA) Constitution and was no longer bound by the Property Trust Clause. We cannot agree.

In *National Board of Examiners of Osteopathic Physicians & Surgeons v. American Osteopathic Association*, this court considered a similar situation to the one we face herein. 645 N.E.2d 608 (Ind.Ct. App.1994). NBOME's articles of incorporation and bylaws expressly reserved to its parent organization, the AOA, the right to approve nominations to NBOME's board. *Id.* at 611. After decades of compliance, NBOME reincorporated and restated its articles of incorporation, omitting the AOA's right of approval.

In considering whether NBOME had the right to make those changes, we noted that "the articles of incorporation and bylaws of a nonprofit corporation constitute a contract between the state and the corporation, the corporation and its members, and the members among themselves." *Id.* at 617. We focused on the language of the relevant documents and the parties' historical course of conduct, finding that AOA was a third-party beneficiary of NBOME's articles and bylaws and, consequently, authorized to enforce those documents. Additionally, we found that NBOME was not permitted to delete AOA's right of approval unilaterally: "If substantive amendments are desired to be made [to the articles of incorporation and bylaws] …, then those amendments must be approved according to the applicable corporate governance rules existing by statute or in the articles themselves." *Id.* at 620.

Here, likewise, Olivet's bylaws expressly stated the church's acknowledgement that it was bound by the PC(USA) Constitution and further stated that the bylaws would not be amended to conflict with that Constitution. Olivet and PC(USA) have not been entirely consistent over the years with respect to abiding by all of the terms of the PC(USA) Constitution. But from 1983 until 2006, when Olivet left PC(USA) altogether, it never attempted to amend its bylaws in a way that conflicted with the PC(USA) Constitution. Even more compelling, when Olivet decided to leave the PC(USA), it did so via the procedure mandated by the PC(USA) Constitution.

Olivet argues that *NBOME* is not analogous to the instant appeal because it involved secular, rather than ecclesiastical, entities. But what we are asked to do herein is resolve a property dispute. We have applied the neutral principles of law approach—as advocated for by Olivet—and have, consequently, applied principles of contract, corporate, and property law in interpreting Olivet's bylaws and the property provisions of the PC(USA) Constitution. Just because a party states that a document or a specific provision of a document is ecclesiastical does not automatically make it so, and here, no ecclesiastical inquiry is necessary to resolve the dispute.

■ Olivet agreed to be a part of the PC(USA) when it was formed in 1983. By so agreeing, Olivet reaped the myriad benefits of being affiliated with a national organization. Olivet amended its bylaws in 1998 and 2000, on both occasions acknowledging that it was bound by the PC(USA) Constitution and that it could not amend its bylaws to conflict with that document. Included in the PC(USA) Constitution is the non-ecclesiastical Property Trust Clause—the validity of which Olivet does not dispute—providing that all property titled in the name of individual congregations is nonetheless held in trust for the benefit of the PC(USA). When Olivet decided to leave the PC(USA), it did so by following the procedures set forth in the PC(USA) Constitution—at least until the Presbytery indicated that it might not permit Olivet to retain the Oak Hill Property.

At that point, Olivet truncated the process, indicated its refusal to abide by the Presbytery's decision, and forced the Appellants to turn to the judicial system to resolve the dispute. Under these circumstances, having applied neutral principles of law and treated these parties and their property dispute as any other corporate entities who appear before us, we can only conclude that the trial court erred by entering summary judgment in Olivet's favor.[3]

The judgment of the trial court is reversed and remanded with instructions to enter judgment in favor of the Appellants together with a declaratory judgment that Olivet has no right, title, or interest in the Oak Hill Property, and a constructive trust on that property in favor of the Presbytery.

NAJAM, J., and MATHIAS, J., concur.

---

3. Inasmuch as we have found in the Appellants' favor without resolving their argument about the admission of the affidavits, we will not address that issue herein.